UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALERIE REISS, | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. 4:21-cv-263 |
| | § | |
| vs. | § | |
| | § | |
| TEXAS A&M UNIVERSITY AND DR. | § | |
| JOHN L. JUNKINS, IN HIS OFFICIAL | § | |
| CAPACITY, | § | JURY IS DEMANDED |
| | § | |
| Defendants | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

Texas A&M University (TAMU) has not lived up to its promise to provide a campus community in which students with disabilities are equal members without barriers. TAMU failed to provide an equitable learning environment for its students with disabilities.

The University's failure to accommodate has left Ms. Reiss unable to graduate and erased her opportunities to begin her career as a veterinarian.

## PARTIES

1. Plaintiff Valerie Reiss (Reiss) is an individual who resides in Garland, Dallas County, Texas.

2. Defendant Texas A&M University (TAMU) is a Texas governmental entity located in Brazos County at 1246 TAMU, Texas A&M University, College Station, TX 77843-1246. Defendant may be served with process through its Interim President, Dr. John L. Junkins, at the same address.

3. TAMU operates a program or activity receiving federal financial assistance within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. §794(b)(2)(A).

4.  TAMU also operates a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181(7)(J).

5.  Defendant Dr. John L. Junkins (Hereinafter referred to as Dr. Junkins) is the interim President of Texas A&M University, where he can be served with process at 1246 TAMU, Texas A&M University, College Station, TX 77843-12463. Dr. Junkins is sued in his official capacity so that the Court may grant the plaintiff such equitable and injunctive relief as is just and proper.

## JURISDICTION

6.  This case is brought under Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 701 et seq., and Title III of the Americans with Disabilities Act, 42 U.S.C. §12188, et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 1343(a)(4).

7.  Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFF'S CASE

8.  Reiss has dreamed of being a veterinarian since childhood.

9.  In 2004, she graduated from Michigan State University with a B.S. in Zoology and a B.A. in Communications. She graduated from TAMU with a M.S. in Genetics in 2009, and a M.Ed. in Curriculum Design & Instruction in 2012.

10. After working as a biology professor and curriculum design consultant for several years while saving for tuition, Reiss applied to TAMU's Doctorate of Veterinary Medicine program (DVM) within the College of Veterinary Medicine (CVM) and was accepted for the Fall 2015 incoming class.

11. Reiss worked hard to achieve professional competence and passed the national licensing exam in April 2019. She was prepared to take the Texas state licensing exam later that month.

12. In anticipation of a May 2019 graduation date and starting her career in veterinary medicine, Reiss had interviews at a number of small animal practices in the Houston, Dallas, and Austin areas. She also had several interviews out of state. She received formal job offers from almost all of the clinics she interviewed with over the course of the prior year.

13. Reiss was in the process of accepting one of the job offers in the Houston area. She just needed to complete her degree program.

14. Unfortunately, TAMU's refusal to accommodate her has delayed and threatens to derail her ability to enter her chosen profession.

15. TAMU needed to accommodate Reiss because she was – and remains – an individual with a disability. She has experienced back pain since she was a teenager. She was diagnosed with adult scoliosis at age 19, and has been dealing with that condition ever since through surgery, bracing, physical therapy, and pain management.

16. In her application to TAMU's DVM program, Reiss openly discussed her condition and the fact that she had been assured by practicing veterinarians that it would not prevent her from practicing veterinary medicine. She has done her part to carefully describe the accommodations she needed and was open about her condition.

17. Reiss began requesting accommodations from the CVM during a Summer Anatomy Workshop before her first semester but has not consistently received the accommodations she needed. Common sense accommodations have been repeatedly denied.

18. TAMU was asked to provide Reiss an accommodation in the form of not requiring Reiss to lift animal cadavers or other heavy objects. TAMU did not provide that accommodation.

19. The ability to lift animal cadavers or other heavy objects is not an express requirement of the program or any course in the program, yet Reiss was constantly asked to do so by professors and clinicians.

20. The CVM administration did not provide Reiss that accommodation or intervene when that accommodation was withheld by professors or clinicians.

21. The CVM administration also did not intervene when fellow students prevented Reiss access to cadavers and bullied her for seeking this accommodation.

22. TAMU was asked to provide Reiss an accommodation in the form of providing her a standing desk.

23. TAMU told Reiss it was not possible to provide her with a standing desk. A height adjustable desk was only provided to Reiss after the Class President (without a disability) was provided one shortly after Reiss' request.

24. CVM failed to properly label a standing desk as being reserved for a student through Disability Services. This led to the equipment being moved, arguments with classmates who sought to deny Reiss use of the equipment, and bullying from fellow classmates.

25. TAMU was asked to provide Reiss an accommodation in the form of providing her with a cart on which to place cadavers during anatomy laboratories and later for surgical equipment during surgical courses and clinical rotations. TAMU did not consistentlyprovide that accommodation.

26. A cart for cadavers was not provided until Reiss retook Anatomy courses in Summer 2016; and then, it was provided by an individual professor and not at the behest of the administration.

27. Without accomodations, Reiss struggled in those courses the prior semesters and did not have access to cadavers to study outside of lab time. With accomodations, Reiss passed those courses.

28. Carts and height-adjustable equipment were not consistently provided during Reiss' fourth/clinical year.

29. During the General Surgery rotation, a clinician, Dr. Amanda Richards, denied and actively blocked Reiss from using said equipment. Dr. Richards went so far as to tell Reiss to place monitoring equipment on the floor, which would require her to constantly bend for the entire length of surgeries.

30. The surgeries for the General Surgery rotation occurred in the same operating rooms that Reiss' previous Anesthesia rotation utilized and provided accommodations without difficulty. The General Surgery clinician responded to requests for accommodation with intimidation tactics, ignoring bullying from fellow classmates, and giving Reiss a failing grade in the course (after giving positive feedback mid-rotation).

31. TAMU's far-too-familiar response to Reiss' accommodation requests can be summed up in the words of one instructor, Dr. Amanda Richards: "I don't want to hear from you again."

32. TAMU's refusal to accommodate Reiss put her in a position - over and over again - where she injured herself and worsened her disability. This led to very concrete harms, over and above the injuries to her back. It led to professors demeaning her for asking for the accommodations and bullying from fellow classmates.

33. In several instances, classmates spread claims that Reiss was faking her condition or lying about accommodations to be lazy or a "case dodger" - refusing to accept certain veterinary treatments or "cases."

34. The manner in which Reiss was treated by her DVM professors / clinicians required her to file several grade appeals (which were successful) because the injuries prevented from successfully completing course work.

35. The negative attitude towards Reiss' accommodation requests on the part of DVM faculty led several of Reiss' classmates to take a similarly negative attitude towards Reiss.

36. Two of Reiss' classmates, Karie Means and Katie Morgan, spread rumors across the vet school that Reiss was purposefully "dodging cases" and using her condition as an excuse to be lazy.

37. Some DVM studetns went out of their way to spread negative, false information about Reiss amongst other classmates. Reiss reported that behavior to Dr. Karen Cornell and Dr. Kenita Rogers, as well as to the Disability Services Office. Rather than take steps to diffuse the situation, Dr. Rogers took the position that Ms. Means and Ms. Morgan were engaged in "free speech," and thus, nothing could be done about it.

38. DVM clinicians ignored Reiss' multiple reports that her classmates on a rotation were not helping her and were outright hostile to her. One clinician went so far as to tell Ms. Means to give Reiss a hard time and not provide assistance.

39. Sadly, the manner in which Reiss was treated by her DVM professors / clinicians caused Reiss to develop severe, situational depression and post-traumatic stress syndrome (PTSD). The actions and inactions of DVM, CVM, and TAMU, coupled with the bullying from classmates, resulted in Reiss' hospitalization.

40. The problems with accommodations reached a low point in March 2019. DVM instructor, Dr. Amanda Richards received accommodation requests from Reiss for a General Surgery rotation. Those accommodations included placing a cart in the operating room

for equipment instead of that equipment being placed on the floor and providing assistance to lift small patients from the floor.

41. Dr. Richards initially agreed to provide the requested accommodations.

42. Several days into Dr. Richards' General Surgery rotation, a cart had yet to be placed in the operating room.

43. On the first Thursday of the rotation, Reiss again brought up the missing cart. Dr. Richards reacted by telling Reiss that she would have to lift all equipment herself and place it on the floor from now on. Reiss had to ask a technician for assistance several times and was in a considerable amount of pain by the end of the surgery.

44. At the end of the first week of the two week rotation, Dr. Richards told Reiss she was doing a great job, that it was evident that Reiss was well prepared, and that Reiss should keep up the good work. In that same conversation, Dr. Richards was reminded by Reiss about needing a cart in the operating room for equipment. As Reiss pointed out, she had these same accommodations during other rotations – like the Anesthesia rotation - without issue. Dr. Richards thanked Reiss for being flexible with the accommodations.

45. At the start of the second week of the rotation, Dr. Richards heard from Reiss again regarding the the lack of accommodations in the operating room and other problems Reiss was facing in the rotation due to her disability. Dr. Richards heard that Reiss was experiencing considerable pain that required pain medication and physical therapy as a result of the lack of accommodations.

46. Dr. Richards heard complaints from Reiss that she was being bulled by classmates. One classmate placed a protocol sheet down low so Reiss could not access it while refusing to let Reiss see or move it.

47. Reiss also reported bullying from her classmates to to Chelsea Michalak, Dr. Richards, and Caleb Coursey.

48. Reiss's classmate, Katie Morgan, went out of her way to speak with the rotation classmates on the General Surgery rotation with Reiss and discourage them from working with Reiss.

49. The bullying from classmates and TAMU's failure to accommodate triggered panic attacks for Reiss starting with the end of the first day of the Equine Internal Medicine rotation and continuing through the General Surgery rotation. These panic attacks stopped after Reiss' last visit to the teaching hospital and did not occur during any of Reiss' externships away from the teaching hospital.

50. Instead of addressing the failure to accommodate and bullying, Dr. Richards blamed Reiss for it. Dr. Richards threatened to fail Reiss from the rotation if she talked about the lack of accommodations again — saying that she "didn't want to hear it again."

51. Two days later, on March 20th, 2019, Dr. Richards pulled Reiss into a meeting and told her she was going to fail her because she needed a "come to Jesus lesson in humility" and that she needed to "stop using [her] back as an excuse."

52. In pain and distraught from Dr. Richards' hurtful, biased comments and her refusal to accommodate Ms. Reiss' disability, Reiss began to again have suicidal thoughts and reached out for help late on the evening of Thursday, March 21, 2019.

53. During the early hours of Friday, March 22, 2019, Reiss checked herself into a hospital and received treatment. Reiss was released from the hospital and into the care of a friend the following morning, with an excused absence through the following Monday and instructions for further care by her physicians in Dallas.

54. Reiss was not yet cleared to resume her coursework, so she emailed her excused absence paperwork to Dr. Richards and the CVM Dean's Office.

55. Reiss applied for and received a medical deferral from CVM on the advice of her physicians. However CVM has not reported that to the Registrar's office or Ms. Reiss' student loan servicers.

56. Dr. Cornell stated in an email that they were willing to work with Reiss to extend the medical deferral as long as needed.

57. TAMU (or DVM) never informed Ms. Reiss that it ended her medical deferral.

58. In the meantime, Dr. Richards gave Ms. Reiss a failing grade for the General Surgery rotation.

59. By May 2019, Reiss was cleared to resume coursework. But because the on-campus environment caused her PTSD-like symptoms and suicidal ideation, her medical providers advised against returning to the teaching hospital.

60. DVM received a letter from Reiss's primary care physician, Dr. Cham, in support of the accommodation request and recommending off-site rotations where Reiss can continue her education without some of the stressors that are specific to the DVM campus.

61. Dr. Cham did not approve Ms. Reiss to return to the CVM campus without an accommodation plan in place.

62. Neither TAMU or CVM responded to Dr. Cham's letter.

63. Reiss was advised by multiple medical providers, including Carmen Scroggin, not to return to the triggers that lead to her hospitalization on March 22nd.

64. Returning to the A&M teaching hospital and working alongside the people who bullied her would be fatal to Reiss.

65. CVM never responded to letters from Carmen Scroggins or Dr. Dawn Shogren regarding an accommodation plan and the recommendation for Reiss to complete her few remaining clinician experiences off-site.

66. Reiss sought an accommodation that would allow her to finish her remaining course work, schedule her state licensing exam, and begin her professional career.

67. Reiss asked for an accommodation that would allow her to complete her remaining four, two-week rotations at veterinary hospitals/clinics in the Dallas area where she lives.

68. This accommodation would be cost-free to TAMU.

69. As is standard for DVM students' externships, Reiss would handle all logistical arrangements for the off-sit rotations/externships.

70. This accommodation will not alter any academic standards or program requirements.

71. DVM students without disabilities are allowed to complete course work off-campus and gain credit.

72. Reiss successfully completed several off-site externships and never had issues receiving accommodations—even during an international externship.

73. Reiss is pursing an "Alternative Track" within the DVM program specializing in exotic pets.

74. For students pursuing an "Alternative Track" within the DVM program, it is commonplace to take many externships.

75. CVM allows alternative track students more externships than the average DVM student.

76. Reiss had not used all of her externship allotment in her approved alternative track plan.

77. Externships hosted at aquariums, zoos, research facilities, and other venues outside of the teaching hospital are routinely approved and conducted.

78. Each two-week rotation could be graded in the same manner that externships and other experiences located off-campus are graded.

79. Each two-week rotation could be supervised by a practicing veterinarian at the off-site location.

80. Reiss asked CVM for a letter acknowledging her intention to finish her rotations and giving her permission to schedule her Texas state licensing exam, which cannot be scheduled sooner than 60 days before graduation.

81. Although Reiss was within the 60 days of clinical work before graduation, CVM refused to provide such documentation or allow her to schedule her Texas state licensing exam.

82. When this request for reasonable accommodations were made to the CVM, Associate Dean for Professional Programs, Dr. Karen Cornell, flatly refused and did not offer a feasible alternative.

83. The refusal to grant this accommodation has already caused Reiss to forego several generous job offers that hinged on her completing her degree and has caused added interest to accrue on Ms. Reiss' student loans, which would have been in the process of being paid down had she been allowed to complete the rotations and graduate.

## REHABILITATION ACT: DISCRIMINATION and FAILURE TO ACCOMMODATE

84. Plaintiff realleges as if fully set forth herein, paragraphs 1-82.

85. Reiss is an individual with a disability within the meaning of Rehabilitation Act in that she is an individual with an impairment that substantially limits one or more major life activities, as defined by §504 of the Rehabilitation Act, 29 U.S.C. §705(20)(B), incorporating by reference 42 U.S.C. §12102.

86. Reiss has a physical impairment (scoliosis and sciatica) that substantially limits major life activities and the operation of her major bodily functions.

87. Reiss has mental impairments (severe situational depression and post-traumatic stress disorder) that substantially limit major life activities and the operation of her major bodily functions.

88. Reiss' disabilities are actual disabilities under the Rehabilitation Act.

89. Reiss was and is qualified to participate in Defendant's DVM program.

90. TAMU failed to accommodate Reiss. It failed to engage in the interactive process by offering any alternative accommodations.

91. By not accommodating Reiss and not allowing her to finish her degree, TAMU excluded Reiss from participation in, denied her the benefit of, and subjected her to discrimination in a program or activity receiving federal financial assistance, in violation of 29 U.S.C. §794(a).

92. If TAMU had accommodated Reiss, she would have already graduated and began her career as a veterinarian.

93. TAMU is the recipient of federal funds.

94. As a direct and proximate result of TAMU's actions and inactions directed at Reiss, she has suffered and continues to suffer damages, including but not limited to: loss of tuition and related expenses, loss of the opportunity to advance in her studies and her career, emotional distress, anxiety, humiliation, and inconvenience.

## AMERICANS WITH DISABILITIES ACT: DISCRIMINATION AND FAILURE TO ACCOMMODATE

95. Plaintiff realleges as if fully set forth herein, paragraphs 1-82.

96. TAMU denied Reiss the full and equal enjoyment of the services of its place of public accommodation because of her disability in violation of 42 U.S.C. §12182(a).

97. TAMU failed to accommodate Reiss' disability, in violation of 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. § 36.309(c).

98. As a direct and proximate result of TAMU's actions and inactions directed at Reiss, she has suffered and continues to suffer damages, including but not limited to: loss of tuition and related expenses, loss of the opportunity to advance in her studies and her career, emotional distress, anxiety, humiliation, and inconvenience.

## **DAMAGES**

99. The damages suffered by the Plaintiff include lost wages and benefits, tuition and fees, as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

## **RELIEF REQUESTED**

The Plaintiff asks this court to enter a judgment:

1.   Declaring that the acts and practices complained of in this Complaint are in violation of the Rehabilitation Act and the Americans with Disabilities Act;

2.   Enjoining and permanently restraining these violations of law;

3.   Directing the defendant to pay the Plaintiff actual and compensatory damages that she suffered, past and future;

4.   Ordering that the Plaintiff reinstated and allowed to finish her remaining rotattions via externships;

5.   Directing the defendant to pay Plaintiff's tuition and fees for her remaining coursework;

6.   Awarding Plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

7.   Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

8.    Awarding Plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

9.    Awarding Plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

/s/ Paul R. Harris
**Paul R. Harris**
Federal I.D. No. 897365
State Bar No. 24059905
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 | f: (713) 621-0993
pharris@eeoc.net

14