IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALERIE REISS, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:21-CV-00263 |
| TEXAS A&M UNIVERSITY AND M. | § | |
| KATHERINE BANKS, IN HER | § | |
| OFFICIAL CAPACITY, | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE JUDGE HANKS, JR.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................2

NATURE OF PROCEEDING ............................................................................4

CONCISE STATEMENT OF ISSUES PRESENTED .......................................4

INTRODUCTION ...............................................................................................5

FACTUAL BACKGROUND ..............................................................................6

   I.  TAMU's DVM Program, Generally. ..........................................................6

     A.  Plaintiff Is Dismissed a Third Time for Academic Reasons. ...........7

     B.  Plaintiff Requests and Receives a Medical Deferral. ....................13

     C.  Plaintiff's 2019 Request for Accommodations: Mental Health
Conditions. ......................................................................................14

     D.  Plaintiff's Prior Request for Accommodation: Physical Conditions:
March 2019-August 2019. ..............................................................16

   II.  Plaintiff's Amended Complaint. ............................................................17

STANDARD OF REVIEW ..............................................................................18

   I.  Federal Rule of Civil Procedure 12(b)(1)..............................................18

   II.  Federal Rule of Civil Procedure 56. ......................................................18

ARGUMENTS & AUTHORITIES....................................................................19

   I.  Plaintiff's ADA Claim Is Barred by Sovereign Immunity.....................19

   II.  TAMU is Entitled to Summary Judgment on Plaintiff's Failure to
Accommodate Claims: She is not Qualified and Her Requested
Accommodations are Unreasonable. ......................................................22

     A.  Plaintiff Is Not Qualified. ...............................................................23

     B.  Plaintiff's Requested Accommodation Was Unreasonable.............25

     C.  The Summary Judgment Evidence Establishes That TAMU's
Disability Services Engaged in The Interactive Process with Plaintiff
and Proposed Reasonable, Alternative Accommodations. ..............29

   III.  TAMU's Academic Decisions Regarding the Essential Requirements of
Its DVM Program Should Be Afforded Deference Because There is No
Evidence of Intentional Discrimination. ................................................31

     A.  Plaintiff's Poor Academic Performance Was the Sole Reason For
Her Dismissal....................................................................................32

     B.  Plaintiff's Failing General Surgery Grade Had Nothing To Do With
Her Disability....................................................................................34

IV. TAMU Is Entitled to Summary Judgment of Plaintiff's Compensatory Damages Claim. ................................................................................. 37

V. All Alleged Conduct Occurring Before January 21, 2019 is Time Barred. ........... 38

CONCLUSION ............................................................................................................. 39

CERTIFICATE OF CONFERENCE ............................................................................ 41

CERTIFICATE OF SERVICE ..................................................................................... 41

## NATURE OF PROCEEDING

This is a Title II Americans with Disabilities Act and Rehabilitation Act case alleging disability discrimination for failing to accommodate Plaintiff during March 2019 through August 2019, when she was a fourth-year student in Texas A&M University's Doctor of Veterinary Medicine (DVM) program. Discovery is closed, and Defendants move for summary judgment of both claims. There is no genuine dispute of material fact in this case: Plaintiff was dismissed from the DVM program for poor academic performance, and after her dismissal she requested accommodations for depression to complete her remaining courses. Not only did Plaintiff fail to resolve her dismissal form the DVM program, but her requested accommodation to complete her remaining clinical rotations via externships at unspecified locations not affiliated with TAMU was unreasonable and would have fundamentally altered essential requirements of the DVM program. TAMU properly engaged in the interactive process, offering Plaintiff alternative accommodations. Ultimately, Plaintiff cannot show that TAMU took any action toward Plaintiff solely or in part because of her disability, its academic decisions are entitled to deference, and TAMU is entitled to judgment in its favor as a matter of law.

## CONCISE STATEMENT OF ISSUES PRESENTED

1. TAMU is a state entity, and Congress did not abrogate state sovereign immunity for all Title II ADA claims. Is TAMU entitled to sovereign immunity because Plaintiff's ADA claim does not assert a violation of the Fourteenth Amendment, and Congress's abrogation of state sovereign immunity for this class of claims is not otherwise valid? *United States v. Georgia*, 546 U.S. 151 (2006).

2. Plaintiff was dismissed from the DVM program for poor academic performance when she failed to achieve the minimum academic standards required of all students. As a result, has Plaintiff failed to satisfy her burden of demonstrating that she is "otherwise qualified" for the DVM Program as required to state an ADA or RA claim? *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215 (5th Cir. 2018); *McGregor v. La. State Univ.*, 3 F.3d 850 (5th Cir. 1993).

3. While dismissed from the DVM program, Plaintiff requested accommodations in the form of readmitting her to the program and permitting her to complete clinical rotations that all students are required to pass to graduate at non-TAMU affiliated locations she would personally select. Did TAMU's Disability Services properly deny this requested accommodation as an unreasonable accommodation that would fundamentally alter essential requirements of the DVM program? *McGregor v. La. State Univ.*, 3 F.3d 850 (5th Cir. 1993); *Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874 (S.D. Tex. 2012), aff'd, 524 F. App'x 93 (5th Cir. 2013); *Shurb v. Univ. of Tex. Health Sciences Center at San Antonio*, 63 F.Supp.3d 700 (S.D. Tex. 2014).

4. While TAMU did not grant Plaintiff her preferred accommodation, TAMU did engage in the interactive process and offered Plaintiff alternative accommodations. Did TAMU meet its obligations under the RA and ADA by engaging in the interactive process and offering Plaintiff accommodations contingent on her resolving her dismissal? *Shurb v. Univ. of Tex. Health Sciences Center at San Antonio*, 63 F.Supp.3d 700 (S.D. Tex. 2014); *Maples v. Univ. of Tex. Med. Branch at Galveston,* 524 Fed. Appx. 93 (5th Cir. 2013).

5. The United States Supreme Court recognizes that an academic institution's decisions regarding a program's academic requirements are entitled to deference. Is TAMU's academic decisions that Plaintiff's requested accommodation was unreasonable and that her subpar clinical rotation performance warranted dismissal from the DVM program for academic reasons entitled to deference because both decisions had nothing to do with Plaintiff's disability? *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985); *McGregor v. La. State Univ.*, 3 F.3d 850 (5th Cir. 1993).

## INTRODUCTION

Plaintiff Valerie Reiss's ADA and RA claims against Texas A&M University (TAMU) and its President should be dismissed because she is not qualified to complete the DVM program with or without reasonable accommodations. Plaintiff was dismissed from the DVM Program due to poor academic performance. She never appealed or otherwise addressed this dismissal. Instead, Plaintiff sought new accommodations for a mental health condition to complete all remaining clinical rotations necessary to receive her degree as externships at unspecified locations of her choosing under clinicians not affiliated with TAMU. This requested accommodation is not reasonable because it would fundamentally alter an essential part of the DVM program. Even if Plaintiff were qualified to finish the DVM program, TAMU properly engaged in the interactive process and offered Plaintiff alternative, reasonable accommodations. TAMU is therefore entitled to summary judgment on these claims.

Plaintiff's claims should also be dismissed because she cannot show that her dismissal from TAMU was solely (RA) or in part (ADA) because of her disability. The record demonstrates that Plaintiff's poor performance had nothing to do with her disability and everything to do with her poor surgical skills, deficient knowledge base, and her inability to accept constructive criticism. TAMU's academic judgment of Plaintiff's inability to meet the rigorous academic and skill requirements for obtaining a DVM degree through successfully completing clinical rotations at TAMU that are designed to simulate the actual practice of veterinary medicine is entitled to deference. TAMU is also entitled to summary judgment of Plaintiff's compensatory damages claims because it was not deliberately indifferent to Plaintiff's disability.

## FACTUAL BACKGROUND

### I.     TAMU's DVM Program, Generally.

Veterinary school proceeds much like medical school: the first three years consist of classroom instruction and laboratory work to gain knowledge and necessary skills in various aspects of veterinary medicine. **Exhibit 1**, Cornell Affidavit; **Exhibit 2**, Reiss Deposition Transcript, p. 110-11. The fourth year is structured entirely differently. **Ex. 2**, p. 111, 113. It consists of a series of two-week rotations to "prepare students to place into practice the cognitive and scientific knowledge and psychomotor skills obtained during the first three years." **Ex. 1**; **Exhibit 1F**, Fourth Year Professional Curriculum, D_002679.

Some of these rotations consist of externships that the student arranges, which are graded on a pass/fail basis. **Ex. 1; Ex. 1F**, D_002734-36; Ex. 2, pp. 113.  Many of the

rotations are clinical rotations. **Ex. 1; Ex. 1F; Ex. 2**, p. 113. Unlike an externship, clinical rotations result in letter grades from TAMU clinical faculty. **Ex. 1; Ex. 1F**, D_002751; **Ex. 2**, p. 115. They are taught by TAMU professors and clinicians that routinely oversee and assess if a student demonstrates competency in an actual clinical setting to the academic and performance standards required by TAMU for conferring a degree. **Ex.1; Ex. 1F**, D_002751; **Ex. 2**, pp. 113, 115-16. Indeed, most of the instruction takes place at TAMU's Teaching Hospital. **Ex. 1; Ex. 1F**, D_002679; **Ex. 2**, p. 116-17, 119. There are certain core clinical rotations that every fourth-year student is required to complete and pass in order to graduate, called the "Core Curriculum." **Ex. 1, Ex. 1F**, D_002683; **Ex. 2,** p. 113. These rotations include Small Animal General Surgery (General Surgery), Houston SPCA, and Small Animal Emergency rotations. **Ex. 1; Ex. 1F**, D_002683, 002698, 002702, 02732. All three of these rotations are supervised by TAMU professors or clinicians, and general surgery and small animal emergency take place at the Teaching Hospital. **Ex. 1; Ex. 1F**, D_002683, 002698, 002702, 02732. Any failed clinical rotation must be remediated to graduate. **Ex. 1F**, D_002751. Plaintiff either failed or has not completed these rotations. **Ex. 1**.

## A. Plaintiff Is Dismissed a Third Time for Academic Reasons.

Plaintiff was dismissed from TAMU's DVM program for poor academic performance on April 3, 2019, after failing her required general surgery rotation. **Ex. 1; Ex. 1J** (General Surgery Grade)**; Ex. 1K,** D_004350 (General Surgery Dismissal). The DVM program's policy on academic dismissals is found in the Professional Student Handbook. **Ex 1E**, REISS 00013-22. A DVM student is subject to automatic dismissal for

poor academic performance if the student accumulates three Ds; two Fs; or two Ds and one F. **Ex 1E**, REISS 00014.[1] A student receiving a D or F has the option to appeal the grade via a formal or informal process if requested in writing within ten days of being notified of the final grade. **Ex. 1E**, Reiss 00018-22. A student dismissed for academic reasons also has the option to appeal for readmission. **Ex. 1E**, Reiss 00023-25.

By April 2019 Plaintiff was familiar with this process: she had been subject to dismissal for academic reasons on two prior occasions. In Spring 2016 Plaintiff's informal grade appeal was resolved via an agreement to remediate the portions of the class she had failed that semester after Plaintiff attributed her poor performance to a delay in receiving accommodations. **Ex. 1A**, D_003792-93; **Ex. 1C**; **Ex. 1D**. Plaintiff was automatically dismissed for academic reasons again in December 2018 after she received a D for the small animal internal medicine (SAIM) rotation. **Ex. 1G**, D_004509.[2] The SAIM clinician noted gaps in Plaintiff's knowledge base, and Plaintiff appealed the grade attributing her poor performance to being sick during the rotation and choosing not to take additional absences that would have required withdrawing from the course and completing it later. **Ex. 1G**, D_003786, 003797-3802; **Ex. 2**, pp. 151-52, 164. She made no mention of her disability or a failure to accommodate in her informal grade appeal, which was denied. **Ex. 1; Ex. 1G**, D_003797-3802, D_004515-16; **Ex. 2**, p. 159.  Plaintiff's formal grade appeal

---

[1] Students are placed on academic probationary warning after earning one D or one F, and are placed on notice of potential dismissal by the Associate Dean after earning a second D. **Ex. 1E**, Reiss 00015.
[2] Students are permitted to continue rotations while a grade appeal is pending so that, if the student's appeal is successful, the student's completion of the program is not delayed. **Ex. 1**; **Ex. 2**, p. 46.

was eventually granted due to the instructor failing to clearly include the grading rubric on the syllabus. **Ex. 1G**, D_004502-4507, 003564-66, 003579.

Meanwhile, a few days before the general surgery rotation began Plaintiff emailed the clinician, Dr. Richards, about her accommodations. **Exhibit 3**, REISS 00969; **Ex. 2**, pp. 173-74. Plaintiff wanted to make her requests in writing, and specifically mentioned needing to adjust the height of surgery tables, have someone else move patients, not bend while scrubbing, and use standing computer stations during rounds. **Ex. 3**, REISS 00969. Plaintiff asked if a standing desk was available in the rounds room. **Ex. 3,** REISS 00969. Plaintiff was told there was no standing desk, but that the exam tables were height adjustable and she was welcome to bring a portable standing desk if she had one. **Ex. 3**, REISS 00968. Plaintiff said she would use a standing computer station elsewhere within the Teaching Hospital or stand and use her tablet/phone. **Ex. 3**, REISS 00968. Plaintiff made no mention of needing a cart for anesthesia equipment. **Ex. 2**, p. 174.

Plaintiff made mistakes and exhibited subpar knowledge from the first day of the rotation—before, even by Plaintiff's own allegations, she was responsible for serving as a surgery's anesthesiologist or raised any issue regarding a cart for anesthesiology equipment. **Ex. 2**, pp. 185-86. On March 7, in the middle of a surgery that Dr. Richards was supervising, Plaintiff asked Dr. Richards to personally go retrieve her a cart for anesthesiology equipment. **Ex. 2**, p. 175-78; **Exhibit 4**, TAMU Civil Rights and Equity Investigations Report, D_001502).[3] Plaintiff did not direct her request to one of the

---

[3] In May 2019, Plaintiff filed disability discrimination complaints against numerous TAMU clinicians and faculty, including Dr. Richards, with TAMU's Office of Civil Rights and Equity Investigations. The Investigation included an interview of Dr. Richards. The investigation

numerous technicians in the room who are there to prepare and provide equipment. **Ex. 2**, p. 178, 183. **Ex. 4**, D_001502-05.  Plaintiff made no effort to make sure a cart was available prior to the middle of an ongoing surgery. **Ex. 2**, p. 179. Plaintiff did not report any issue with her accommodations to the DVM administration, Disability Services, or follow-up with the clinician about it after this incident or at any time during the rotation. **Ex. 2**, p. 180, 183; **Ex. 4**, D_001502; **Exhibit 6,** Orr Deposition p. 22.

Rather, Dr. Richards brought up whether Plaintiff was being appropriately accommodated during a mid-rotation feedback at the end of the rotation's first week that Plaintiff recorded. **Exhibit 5**, Audio Recording. Dr. Richards asked Plaintiff how her accommodations were going; Plaintiff responded it was going well. **Ex. 5**. Her classmates were being professional and helpful. **Ex. 5**. Plaintiff and Dr. Richards discussed needing to put anesthesia equipment up high, and discussed putting it up on an IV pole because the room was cramped. **Ex. 5**. Dr. Richards and Plaintiff also discussed the events of the Thursday surgery, and Plaintiff admitted that it was a weird, stressful situation so she just "rolled with it." **Ex. 5**.

Plaintiff was counseled on the need for improvement. Plaintiff was told that she was approaching surgeries with too much confidence and needed to slow down, ask questions, and clarify if she was unsure of what came next. **Ex. 5**. During Plaintiff's first surgery she made an incision on the animal at the wrong location. **Ex. 5.** Dr. Richards stressed multiple

---

concluded that there was insufficient evidence to support Plaintiff's allegation of disability discrimination. The final report and Dr. Richards' interview are attached as **Exhibit 4**.

times for Plaintiff not to go too fast, not to be too confident, to ask questions if she was unsure about the next surgical step before proceeding, and to not get too cocky. **Ex. 5.**

Plaintiff's performance did not improve during the rotation's second week. Rather, Dr. Richards followed up with a detailed email providing Plaintiff with concrete examples and steps she needed to take to improve her performance. **Ex. 1H**, REISS 00439-40; **Ex. 2**, p. 183. This included that Plaintiff was overly confident, attempting surgical procedures that were incorrect, and making mistakes that demonstrated a lack of knowledge and skills. **Ex. 1H**, REISS 00439-40. Plaintiff needed to "know how to read your patient without relying on the monitor" and "take our instructions seriously. When we make corrections it is because we are trying to help you learn. We are not trying to criticize or make you feel badly." **Ex. 1H,** REISS 00440.

Dr. Richards met again with Plaintiff about her poor performance on Wednesday, March 20. **Ex. 1H**, REISS 00437; **Ex. 2**, p. 183, 199. Apparently, Plaintiff had not read Dr. Richard's prior feedback. **Ex. 1H**, REISS 00437; **Ex. 2**, p. 197. Dr. Richards indicated that Plaintiff was likely to fail the course. **Ex. 1H**, REISS 00437; **Ex. 2**, p. 183, 199. That night, Plaintiff responded to Dr. Richard's email, making no reference to her disability or a failure to provide Plaintiff with her needed accommodations. **Ex. 1H**, REISS 00437-38; **Ex, 2**, p. 202. Rather, Plaintiff disputed and attempted to refute Dr. Richards' observations and critiques of Plaintiff's performance. **Ex. 1H**, REISS 00437-38; **Ex. 2**, pp. 185-90, 202-03. Plaintiff did not attempt to discuss the emails or her performance with Dr. Richards the following day during the rotation. **Ex. 2**, p. 206-7.

Dr. Richards responded to Plaintiff, providing additional examples and concerns with Plaintiff's surgery skills, knowledge, and overly confident approach that could endanger the wellbeing of her patients. **Ex. 1H,** Reiss 00433-37. Plaintiff was making mistakes but would deny these mistakes when they were pointed out or get defensive, which was extraordinarily concerning, in addition to Plaintiff's continued overly confident approach to surgical procedures. **Ex. 1H,** Reiss 00433-37. For example, Plaintiff made up a ligation that she would not be able to tie off, but rather than admit it was wrong Plaintiff claimed she had seen it done that way before. **Ex. 1H,** Reiss 00436. Plaintiff also continued to make the same mistakes and did not demonstrate an understanding of medical concepts. **Ex. 1H,** Reiss 00436-37. Plaintiff had not demonstrated an ability to take instruction, accept mistakes and learn from them, or ask questions when she did not know how to do something. **Ex. 1H**, Reiss 00436-37. Dr. Richards ended with "I do not trust you as a veterinarian at this point in time. I feel that if I pass you, I am passing the buck to the next clinician without fixing the problem." **Ex. 1H**, REISS 00437. Dr. Richard's felt "responsible for the health and well-being of the patients you will encounter in your career. Right now, I can't trust you." **Ex. 1H**, REISS 00437.

Plaintiff received an F in her general surgery rotation, resulting in her automatic dismissal from the DVM program for accumulating two Fs (and one D), **Ex. 1**; **Ex. 1K,** D_004350-51**; Ex. 1J,** D_003769-003772. The prior deficient grades were earned during her first semester (Fall 2015) when Plaintiff had not submitted a request for accommodations to Disability Services. **Ex. 1K,** D_004350; **Ex. 2**, p. 69-72; 75, 85. Reiss

was informed of the options available for appealing that dismissal or applying for readmission to finish her degree. **Ex. 1K,** D_004350-51.

**B. Plaintiff Requests and Receives a Medical Deferral.**

After being dismissed from the DVM program, Plaintiff (through her husband) requested and received a medical deferral on April 10, 2019. **Ex. 1L**, D_004352; **Ex. 2**, pp. 211-12. Plaintiff's medical deferral was originally approved through May 6, 2019. **Ex. 1L**, D_004352. Plaintiff was directed to notify Dr. Cornell in writing five-days prior to her anticipated return date if a further extension was needed. **Ex. 1L**, D_004352. She was also required to provide a doctor's note confirming she would be able "to continue in the DVM professional program and meet the rigorous demands of the fourth-year curriculum at the time of your return." **Ex. 1L**, D_004352. The deferral letter emphasized that "because you have been dismissed from the professional curriculum. . . 10 days following your return from the medical deferral, you must notify the Professional Programs Office if you wish to appeal the failing grade you earned" or wished to appeal for readmission to the DVM program. **Ex. 1L**, D_004352. Plaintiff was also told that deferrals are granted for no more than one academic year. **Ex. 1M**, REISS 01058; **Ex. 1E,** REISS 00023**.**

The last time Plaintiff (through her husband) requested an extension of her medical deferral was in May 2019, requesting an extension through June 4, 2019. **Ex. 1; Ex. 1O**, REISS 01073. On August 8, 2019, Plaintiff requested that the DVM return her to active student status so she could complete her remaining rotations, and requested to complete these rotations at non-TAMU locations. **Ex.1; Ex. 1N**, REISS 01124. DVM administrators responded that Plaintiff had been dismissed from the DVM program for academic reasons

and must address her dismissal before she could return to her rotations. **Ex.1; Ex. 1N**, REISS 001126; **Ex. 2**, pp. 229-30. Plaintiff never did. **Ex. 2**, p. 231. Plaintiff similarly reached out to Disability Services requesting an accommodation letter, which could not be provided until she was an active student. **Ex. 6B**, D_002498-99.

### C. Plaintiff's 2019 Request for Accommodations: Mental Health Conditions.

Despite her dismissal, while on medical leave Plaintiff requested new accommodations from TAMU's Disability Services for situational depression. **Ex. 6A**, D_002565-002569; **Ex. 2**, p. 217. Plaintiff requested to take all remaining, required clinical rotations—including Teaching Hospital rotations—as externships at alternative locations of her choosing in the Dallas/Fort Worth area. **Ex. 6A**, D_002565. The Disability Packet paperwork filled out by Plaintiff's treating physician recommended the following academic accommodations:

> Accommodations designed to avoid back/neck pain and re-injury of spine:
> * availability of a standing desk and time/ability to use without shaming/harassment, standing desk must be assembled (not still in the box), in working condition, not placed in a closet, not used by other students, etc.
> * place all equipment at waist- to head-height on carts, etc.
> * do not require Val to place equipment on floor, repeatedly reference equipment placed on the floor, or strain neck to reference equipment placed at an angle in a wash basin (due to requested cart not being provided)
> * do not require Val to lift patients or equipment from the floor to table/kennel/cart/desk/etc. or vice versa
>
> Accommodations designed to ensure mental wellness:
> * signed acceptance of all accommodations by supervising clinicans and acknowledgement of their responsibility for ensuring all accomodations are provided and a positive learning environment is maintained
> * timely, adequate response to all instances of bullying/harassment from classmates/technicians/clinicians (including, but not limited to exclusion from activities, withholding references/equipment, gossip/slander, bragging about killing exotic/wild animal species)

**Ex. 6A**, D_002569. Under "additional information," her provider suggested that perhaps Plaintiff should complete her remaining rotations outside the vet school to ensure an "environment free from bullying/harassment." **Ex. 6A**, D_002569.

Plaintiff's request was reviewed by Disability Service's Decision, Review, and Consultation Committee. **Ex. 6B**, D_002501-2;[4] **Ex. 6**, pp. 23-24, 30-31. Before this meeting, Dr. Kristie Orr, Director of Disability Services, contacted Dr. Karen Cornell to discuss the nature of Plaintiff's remaining rotations and the essential requirements of the program and courses. **Ex. 1**; **Ex. 6**, p. 45-46; 48-49. Dr. Orr relies upon an administrator liaison from the various professional schools regarding the essential requirements of the professional program's curriculum. **Ex. 6**, pp. 60-61, 94. Dr. Orr also spoke to Plaintiff about her request. **Ex. 6**, p. 40. The Committee carefully considered Plaintiff's request and supporting documentation, ultimately deciding that Plaintiff's requested accommodations were not a reasonable modification. **Ex. 6B**, D_002501-2; **Ex. 6**, p. 60. Plaintiff would not get the educational experience that all other students received, given how the vet school clinical rotations were run, if the courses were completed without TAMU supervision, instructors or clinicians at non-TAMU locations. **Ex. 6**, p. 60. The Committee did provide Plaintiff with alternative accommodations that aligned with the academic accommodations outlined by Reiss's provider. See **Ex. 6,** pp. 40-41; **Ex. 6A**, D_002569; **Ex. 6B**, D_002501-2. Dr. Orr also referred Plaintiff to TAMU's Civil Rights Office regarding her complaints of discrimination and bullying. **Ex. 6B**, D_002502; **Ex. 6**, p. 27. Accommodations for physical or mental health conditions fell within Disability Services' purview, but it does not handle complaints of student harassment or discrimination. **Ex. 6**, pp. 16, 58-59, 87-88.

---

[4] These case notes were included in Disability Services' electronic case file for Plaintiff. **Ex. 6,** pp. 54-55.

Dr. Orr spoke with Plaintiff about the Committee's decision, and Plaintiff indicated that the potential for discrimination was her primary concern. **Ex. 6B**, D_002501; **Ex. 2**, p. 221. Plaintiff appealed the Committee's decision to Dr. Orr as the Director of Disability Services. **Ex. 2**, p. 225; **Ex. 6**, pp. 66-67. **Ex. 6B**, D_002499-2501. Dr. Orr had a phone call with Plaintiff and Plaintiff provided Dr. Orr with additional information she thought was pertinent. **Ex. 6,** pp. 67, 90-91**; Ex. 6B**, D_002499-2501. Plaintiff did not request any alternative accommodations and wanted to complete all remaining rotations at non-TAMU locations; not some of them, all of them. **Ex. 6B**, D_002499-2501; **Ex. 2**, pp. 226-27. Dr. Orr also spoke with the Civil Rights Office and Dr. Cornell before deciding Plaintiff's appeal.  **Ex. 6**, pp. 86, 89. On August 1, 2019, Dr. Orr emailed Plaintiff that she was denying her appeal and upholding the Committee's decision. **Ex. 6B**, D_002499-2500. Plaintiff had no further correspondence with Disability Services regarding potential accommodations. **Ex. 2**, p. 232. No other DVM student had requested accommodations in the form of completing rotations as externships or offsite. **Ex. 1**; **Ex. 6**. pp. 65-66, 92.

### D. Plaintiff's Prior Request for Accommodation: Physical Conditions: March 2019-August 2019.

The Professional Student Handbook provides that TAMU's Disability Services handles accommodation requests:

> If a student believes that he/she has a disability that requires special accommodations for any class, they should first go through **Texas A&M University's Disability Services Office** for documentation of the disability and recommended accommodations (i.e., extra time on tests, quiet room, etc. ). If it is determined that you are eligible for special accommodations, you will receive a report from the Disability Services Office that you should **present to your instructor(s).** In most cases accommodations will not be given without this report. (*See Section 7.V of the PSH for the American with Disabilities Act statement*)

**Ex. 1E**, Reiss 00023, 00037. Disability Services participates in the DVM's first year orientation and provides a presentation on how to request accommodations. **Ex. 6**. pp. 12-

13. Plaintiff had also previously completed graduate programs at TAMU and requested accommodations through Disability Services, so she was familiar with the process. **Ex. 2**, pp. 17. Plaintiff requested accommodations through Disability Services on January 8, 2016—after Plaintiff received a D in one course and an F in another first-year course. **Exhibit 7**, D_002494-5; **Ex. 2**, p. 69-72; 75, 85. Plaintiff indicated that she suffered from depression, but only requested accommodations for back conditions exacerbated by a car accident. **Ex. 7**, 2016 D_002494-5; **Ex. 1B**, REISS 00782; **Ex. 2**, p. 71-73. Plaintiff was approved for accommodations on a temporary, one year basis and received a Letter of Accommodation. **Ex. 1B**, REISS 00782; **Ex. 8**, D_002553. Plaintiff signed a Services Agreement that specifically stated that if "the accommodations are not being met by the instructor, it is your responsibility to contact your Access Coordinator." **Ex. 8**, D_002553; **Ex. 6**, pp. 91-92. Plaintiff was responsible for providing the accommodations letter to her instructors, discussing her disability and her needs, and reporting to Disability Services any issues she had with receiving her approved accommodations. **Ex. 8**, D_002553; **Ex. 6,** pp. 43-44; **Ex. 2**, p. 91.

## II.    Plaintiff's Amended Complaint.

Plaintiff asserts an RA claim alleging that TAMU failed to accommodate her and thereby excluded her from participation in TAMU's program between March and August 2019, and purportedly failed to engage in the interactive process. Dkt. 13, ¶ 91. Plaintiff similarly alleges that TAMU's failure to accommodate her between March and August 2019 excluded her from participation in its program in violation of Title II of the ADA. Dkt. 13, ¶ 97.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(1).

Rule 12(b)(1) provides for dismissal due to a "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by Eleventh Amendment immunity. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005); *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1)"). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court may dismiss under Rule 12(b)(1) "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

### II.     Federal Rule of Civil Procedure 56.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of

demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc*., 669 F.2d 1026, 1031 (5th Cir. 1982). If the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to materials in the record or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment*." Duffy v. Leading Edge Prods*., 44 F.3d 308, 312 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *DIRECTV Inc. v. Robinson*, 420 F.3d 352, 536 (5th Cir. 2001) (citations omitted).

## ARGUMENTS & AUTHORITIES

### I.    Plaintiff's ADA Claim Is Barred by Sovereign Immunity.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Unlike Section 504 of the Rehabilitation Act, Title II of

the ADA "applies to public entities regardless of whether they receive federal funds," *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 276 n.4 (5th Cir. 2005), and only waives a state's sovereign immunity in some circumstances. Texas law establishes that TAMU is a unit of state government that is entitled to sovereign immunity. See TEX. EDUC. CODE §§ 86.02; 61.003 (Vernon 2002).

To determine whether ADA Title II is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment, courts apply the three-part inquiry set forth in *United States v. Georgia*, 546 U.S. 151, 159 (2006), on a claim by claim basis. *Hale v. King*, 642 F.3d 492, 497–98 (5th Cir. 2011) (per curiam). First, a court must determine "which aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. Plaintiff's ADA claim is based upon the same conduct underlying her RA claim—that TAMU failed to accommodate her between March and August 2019. But as set forth below, Plaintiff cannot establish that TAMU's conduct violated the ADA or RA. Assuming Plaintiff satisfies the first prong of the *Georgia* analysis, the second step requires the court to determine "to what extent such misconduct also violated the Fourteenth Amendment." *Id*. "If the [s]tate's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Hale*, 642 F.3d at 498.

Here, Plaintiff has not alleged a due process violation. The Fifth Circuit has also never recognized a property interest in continuing higher education—let alone a professional degree when a student has been dismissed for poor academic performance. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–90 (1978); *Goss v. Lopez*,

419 U.S. 565, 579 (1975).[5] Additionally, Plaintiff's failure to exhaust TAMU's appeal procedures for challenging her automatic dismissal for academic reasons would foreclose any due process claim.

So the Court must proceed to the third step of the *Georgia* inquiry, which requires the Court to decide "whether Congress's purported abrogation of sovereign immunity as to that class of conduct"—i.e., conduct that violates Title II of the ADA but does not independently violate the Fourteenth Amendment—"is nevertheless valid." *Georgia*, 546 U.S. at 159. The class of conduct Plaintiff complains of—alleged failure to provide a student with accommodations requested *after* the student was dismissed for academic reasons when the student has refused to otherwise address their academic dismissal—is not "nevertheless valid." Nor was it within Congress's authority to abrogate sovereign immunity for a public university's academic judgments.  Courts are not well positioned to second-guess the rationality of a state's administration of academic institutions. See, *Grutter v. Bollinger*, 539 U.S. 306, 328–29 (2003) (recognizing that courts defer to academic institutions, within constitutional limits, on admission decisions). Indeed, the Supreme Court has warned against "further enlarg[ing] the judicial presence in the academic community and thereby risk[ing] deterioration of many beneficial aspects of the faculty-student relationship." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78,

---

[5] In an academic setting, due process requirements differ if the student was dismissed for disciplinary reasons or for academic reasons. *Shah v. Univ. of Texas Sw. Med. Sch.*, 54 F. Supp. 3d 681, 692 (N.D. Tex. 2014). Due process does not require a hearing before dismissing a student for failure of academic performance or a right of appeal before dismissing a student for poor performance. *Id.* (citing Horowitz, 435 U.S. at 90).

90 (1978). Therefore, Plaintiff's ADA claim should be dismissed as barred by TAMU's sovereign immunity.

II.     **TAMU is Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claims: She is not Qualified and Her Requested Accommodations are Unreasonable.**

Both the RA and ADA prohibit discrimination against "qualified individuals with disabilities," with two notable distinctions: (1) the RA does so in the context of federally-funded programs or activities, whereas the ADA applies to public entities; and (2) the RA is triggered by discrimination "solely" by reason of disability, whereas the ADA applies even if discrimination on the basis of disability is not the sole reason for the exclusion or denial of benefits. See *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

"Discrimination includes a failure to make reasonable accommodations." *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016) (citation omitted); *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012), aff'd, 524 F. App'x 93 (5th Cir. 2013). A failure to accommodate claim requires establishing that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir.2013). "The plaintiff, however, bears the burden of requesting reasonable accommodations." *Shurb v. Univ. of Tex. Health Sciences Center at San Antonio*, 63 F.Supp.3d 700, 708-9 (S.D. Tex. 2014) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). "[B]ecause the ADA does not

require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms." *Windham v. Harris Cnty,* Texas, 875 F.3d 229, 236-37 (5th Cir. 2017) (cleaned up).

### A. Plaintiff Is Not Qualified.

To be "otherwise qualified" for a postsecondary education program, an individual with a disability must satisfy the program's "essential" requirements with or without the aid of reasonable accommodations. *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 220 (5th Cir. 2018) (citing *McGregor v. La. State Univ.*, 3 F.3d 850, 855 (5th Cir. 1993) (law student who did not meet the school's minimum cumulative GPA requirements was not otherwise qualified to remain in the program)). A requirement is "essential" if "the nature of the program would be fundamentally altered" without it. *Id.*; *see also Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (ADA case). A plaintiff asserting a violation of the ADA or RA bears the burden to establish that she is qualified. *Neely v. PSEG Tex., LP*, 735 F.3d 242, 247 (5th Cir 2013).

Here, Plaintiff is not qualified because she does not satisfy the DVM program's essential academic performance requirements. Plaintiff was automatically dismissed from the DVM program after accumulating two Fs and 1 D grade. **Ex. 2**; **Ex. 1E**, REISS 00014; **Ex. 1K**, D_004350. This dismissal was in effect *before* Plaintiff was granted a medical deferral and *before* Plaintiff sought accommodations for mental health conditions. **Ex. 1**; **Ex. 1K**, D_004350; **Ex. 1L**, D_004352**; Ex. 1N**, REISS 001126; **Ex. 2**, pp. 229-30. Plaintiff's medical deferral confirmed that she had been academically dismissed from the

program, but that TAMU was granting her an extension of the time to appeal her dismissal. **Ex. 1L.**

Plaintiff has never appealed her failing grade or appealed for readmission to the DVM Program. **Ex. 1**; **Ex. 2**, p. 231. Instead, Plaintiff, through her husband, requested to return to her fourth-year rotations on August 8, 2019. **Ex. 1**; **Ex. 1N**.  TAMU again reminded Plaintiff that she had been dismissed from the DVM program for academic reasons.  *Id.* She would need to appeal or otherwise resolve her failing general surgery rotation grade before she could return to active student status. *Id.* Plaintiff failed to take any action.

To the extent Plaintiff claims that she was never cleared to return from her medical deferral, then she is also not qualified for the program and TAMU is entitled to summary judgment. Medical deferrals can only be granted for one year, and Plaintiff has far exceeded that timeframe. **Ex. 1M**, REISS 01058; **Ex. 1E,** REISS 00023. Plaintiff stopped complying with her medical deferral in June 2019, when she failed to provide TAMU with required updates regarding her return date.[6] **Ex. 1; Ex. 1O**, REISS 01073.

Plaintiff instead will likely argue that she was cleared to return from the medical deferral *only if* she was accommodated by completing her remaining courses at offsite locations in the Dallas area. But, as explained below, this is not a reasonable accommodation and Plaintiff is therefore not "otherwise qualified" to participate in the DVM program. *See McGregor*, 3 F.3d at 859 (law student did not demonstrate he was

---

[6] That Plaintiff was never cleared to return is also belied by her Amended Complaint, where Plaintiff alleges that she was cleared to return to the program in May 2019. Dkt. 13, ¶60.

otherwise qualified for the program because accommodations he claimed would enable him to be qualified for program—including choosing the time for exams and being permitted to take them at home—were unreasonable and altered essential program requirements).

Additionally, Plaintiff's requested accommodation to complete her rotations at other locations while supervised by individuals not associated with TAMU demonstrates that Plaintiff is not attempting to access TAMU's program or services at all—and is therefore not requesting a reasonable accommodation. A foundational tenet of the ADA and RA is to prevent exclusion of disabled persons from "participation in or. . . [denial of] the benefits of the services, program, or activities of a public entity." 42 U.S.C. 12132. Plaintiff is not seeking to access the same benefits made available to nondisabled DVM students. She wants the degree without having to participate in the remainder of TAMU's DVM program, and neither the ADA nor RA require such a significant deviation by TAMU to its fourth-year curriculum. No student had been permitted to complete a required, core clinical rotation conducted at the Teaching Hospital at a different location. **Ex. 1**; **Ex. 6**. pp. 65-66, 92. No student had been permitted to satisfy these degree requirements via externships instead of clinical rotations. **Ex. 1**; **Ex. 6**. pp. 65-66, 92. Therefore, TAMU is entitled to summary judgment.

## B.  Plaintiff's Requested Accommodation Was Unreasonable.

A student is entitled to requested accommodations only by demonstrating "that the accommodations constitute reasonable deviations from the [programs] usual requirements which meet his special needs without sacrificing the integrity of the program." *McGregor*,

3 F.3d at 858-59 (cleaned up). "[A]n institution is not required to lower or effect substantial modifications of standards to accommodate a handicapped person if its standards are reasonable. *Campbell,* 842 F.3d at 380 (citations omitted). "Academic requirements that the recipient can demonstrate are essential to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory." *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). "[U]nder no circumstances is the University required to provide accommodations that would fundamentally alter the nature of the service, program, or activity' and need not alter eligibility criteria that are 'shown to be necessary for the provision of the service, program, or activity being offered." *Shurb*, 63 F. Supp. 3d at 709 (citations omitted); *Maples*, 901 F. Supp. 2d at 883 (quoting 28 C.F.R. § 35.130(b)(7)–(8)).

A modification "is not reasonable if it either imposes undue financial and administrative burdens ... or requires a fundamental alteration in the nature of the program." *Sch. Bd. v. Arline*, 480 U.S. 273, 287 n. 17 (1987) (citation omitted) (quoting *Davis*, 442 U.S.at 410, 412). A court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is "reasonable on its face, i.e., ordinarily or in the run of cases," or if the defendant establishes as a matter of law that the proposed modification will cause "undue hardship in the particular circumstances." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002).

The Fifth Circuit in *McGregor* recognized that refusing to permit a part-time schedule and at-home exams were academic decisions that did not violate the RA because granting those accommodations would be a fundamental alteration of the law school's

program given the program's historical practices and that such accommodations had never been permitted in the past. 3 F.3d at 859.  It would alter the school's "intensive program with high academic standards. . . best equipped to produce high quality lawyers through simulating the practice of law." *Id.* The requested accommodations would require the school "either to lower its academic standard. . . or to compromise the reasonable policy of its academic program. . . Section 504 does not require this much." *Id.* at 860.  Granting the accommodations "would constitute preferential treatment and go beyond the elimination of disadvantageous treatment mandated by Section 504." *Id.* at 860.

Similarly, not requiring Plaintiff to complete core clinical rotations that all students are required to complete with assessment by TAMU professors and clinicians would be a fundamental alteration of the DVM program. **Ex. 1**; **Ex. 1F**, D_002679, 002751; 002683. **Ex. 6**, p. 60; **Ex. 2**, p. 111, 113. TAMU had not permitted any other student to complete core clinical rotations at personally selected, offsite locations or via externships. **Ex. 1**; **Ex. 6**. pp. 65-66, 92. It would alter the school's "intensive program with high academic standards. . . best equipped to produce high quality [veterinarians]" through simulating the practice [of veterinary medicine]." *Id.* at 859. It would provide Plaintiff with preferential treatment, not equal access to the DVM Program since Plaintiff was requesting to not participate in the DVM program for her remaining rotations.

Moreover, TAMU could not provide Plaintiff with her requested accommodations without readmitting her to the DVM program as an accommodation. The same is true today: the injunctive relief sought by Plaintiff would require TAMU to readmit her following a dismissal for academic reasons that Plaintiff did not appeal or address.

Readmission to the DVM program with full credit for prior coursework—now completed over 3 years ago—following an academic dismissal is not a reasonable accommodation under the ADA or RA. Similar failure to accommodate claims have been dismissed. See *Profita v. Regents of the Univ. of Colo.*, 709 Fed. Appx. 917 (10th Cir. 2017) (proposed accommodation including readmission to medical school program with full credit after academic dismissal was not a reasonable accommodation required by the ADA; school was not required to ignore, override, or reverse previous dismissal for unsatisfactory performance under the ADA); *Powell v. Nat'l Bd. Of Medical* Examiners, 364 F.3d 79, 88 (2nd Cir. 2004) ("It was well within UConn's authority to decide that in order for it to adhere to the demanding standards of a medical school responsible for producing competent physicians it needed to require plaintiff to pass" a specific exam to continue in the program). Courts within the Fifth Circuit have similarly concluded that a "second chance" does not constitute a reasonable accommodation under the RA. *Maples,* 901 F. Supp. 2d at 882 (quoting *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir.2012) (("[T]he law does not require the school to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability."); see also *Burch v. Coca-Cola Co.*, 119 F.3d 305, 319-20, n. 14 (5th Cir. 1997). There is no obligation under the ADA or the RA to readmit Plaintiff to the DVM program as an accommodation. Plaintiff could have (and should have) sought readmission by the same process as all other students: by appealing her failing grade or appealing for readmission. **Ex.1; Ex. 1E; Ex. 1K,** D_004350; **Ex. 1L**, D_004352; **Ex. 1N**, REISS 001126; **Ex. 2**, pp. 229-30.

Finally, Plaintiff's requested accommodation imposed an undue administrative burden. **Ex. 1**. Because students receive letter grades for clinical rotations, TAMU would have to attempt to vet the clinicians Plaintiff selects to oversee her offsite rotations since they would not be a TAMU professor or clinician that routinely assesses TAMU student performance. **Ex. 1**; **Ex. 1F**, D_002751; **Ex. 2**, p. 115.  TAMU would need to coach them regarding the clinical requirements, grading rubric, and expectations. *Id.* Even then, unlike rotations at the Teaching Hospital, TAMU would have no control over the clinical rotation setting to ensure the quantity and quality of experiences and supervision Plaintiff received. **Ex. 1**; **Ex. 6**, p. 60. TAMU would have limited, if any, ability to ensure Plaintiff's accommodations for her back condition were being provided. **Ex. 1**. If Plaintiff did not pass the offsite rotation, TAMU's ability to comply with its grade appeal process would be significantly hindered. Ex. 1. These additional burdens further render Plaintiff's requested accommodations unreasonable.

### C. The Summary Judgment Evidence Establishes That TAMU's Disability Services Engaged in The Interactive Process with Plaintiff and Proposed Reasonable, Alternative Accommodations.

Neither the RA nor ADA mandates that a plaintiff be given her preferred accommodation. *See Shurb*, 63 F.Supp.3d at 709 (citing *E.E.O.C. v. Agro Distrib.*, LLC, 555 F.3d 462, 471 (5th Cir. 2009)).  Rather, a school is required to "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a). "Once a qualified individual with a disability requests reasonable accommodation, 'the

public entity has an obligation to engage in an 'interactive process' to determine the best means of accommodating the plaintiff's disability.'" *Shurb*, 63 F.Supp.3d at 709 (quotation omitted).

Setting aside that Plaintiff is not otherwise qualified for the DVM program for purposes of the ADA or RA and that Plaintiff's requested accommodations were not reasonable, the record demonstrates that TAMU's Disability Services engaged in the interactive process with Plaintiff to shape reasonable accommodations that would not fundamentally alter the DVM program yet address the limitations imposed by Plaintiff's mental health condition. Plaintiff's requested accommodations were considered by Disability Service's Committee after input from the DVM regarding Plaintiff's remaining rotations and the program's essential requirement. **Ex. 1**; **Ex. 6**, pp. 45-46, 48-49, 60-61, 94; **Ex. 6B**, D_002501-2. The Committee found Plaintiff's requested accommodations to be unreasonable, and instead proposed alternative accommodations that closely aligned with the academic accommodations recommended by Plaintiff's physician. **Ex. 6B**, D_002501-2; **Ex. 6**, p. 40-41, 60; **Ex. 6A**, D_002569. Plaintiff appealed the Committee's decision to Dr. Orr. **Ex. 2**, p. 225-27; **Ex. 6**, pp. 66-67, 86, 89-91. **Ex. 6B**, D_002499-2501. Dr. Orr talked with Plaintiff to discuss her accommodations request, contacted Dr. Cornell at the DVM program, and contacted the Office of Civil Rights regarding Plaintiff's bullying and discrimination complaints before ultimately upholding the Committee's decision. *Id.;* **Ex. 1**. The information Plaintiff provided in support of her appeal did not demonstrate why offsite rotations were needed for Plaintiff to have equal access to the DVM program. **Ex. 6B**, D_002499-2501. Plaintiff would not consider any alternative

accommodation short of precisely what she had requested. **Ex. 6B**, D_002499-2501; **Ex. 2**, pp. 226-27. Additionally, Plaintiff's primary concern was potential bullying, but Disability Services does not provide for accommodations related to bullying (nor does the ADA or RA). **Ex. 6B**, D_002501; **Ex. 2**, p. 221; **Ex. 6**, pp. 16, 58-59, 87-88. Dr. Orr confirmed that Plaintiff had reported her complaints of harassment to the proper TAMU departments for consideration and focused on Plaintiff's listed disabilities and their corresponding limitations on Plaintiff's ability to otherwise participate in the TAMU program. **Ex. 6B**, D_002502; **Ex. 6**, p. 16, 27, 58-59, 87-88. After Dr. Orr denied Plaintiff's appeal, Plaintiff stopped engaging in the interactive process. **Ex. 2**, p. 232; **Ex 6B**. Plaintiff never considered accepting anything other than her preferred accommodation (**Ex. 2**, p. 232), and TAMU is entitled to summary judgment because it complied with its obligations under the ADA and RA.

**III.    TAMU's Academic Decisions Regarding the Essential Requirements of Its DVM Program Should Be Afforded Deference Because There is No Evidence of Intentional Discrimination.**

Absent evidence of discriminatory intent or disparate impact, reasonable deference must be accorded to an educational institution's academic decisions. *McGregor*, 3 F.3d at 859 (internal citations omitted). "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985) (quoting *Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n. 6 (1978). Here, there is no evidence that TAMU's dismissal of Plaintiff from the DVM program was done with discriminatory intent or that Plaintiff received a failing general

surgery rotation grade because of her disability. TAMU's determination that Plaintiff's requested accommodation was unreasonable and its proposal of alternative accommodations were also not motivated by an intent to discriminate against Plaintiff because of her disability.

### A. Plaintiff's Poor Academic Performance Was the Sole Reason For Her Dismissal.

Even assuming, *arguendo*, that Plaintiff could establish that she was qualified to remain in the DVM program (she cannot), she cannot show that her disability was in any way related to her dismissal from TAMU (as required by the ADA), much less the "sole reason" for her dismissal (as required by the RA). *See Pinkerton v. Spellings,* 529 F.3d 513, 516–19 (5th Cir. 2008); *see also Soledad v. U.S. Dep't of Treasury,* 304 F.3d 500, 503–04 (5th Cir. 2002). Plaintiff must show that discrimination against her due to her back condition (and later mental health condition) was the "sole reason" for her exclusion from TAMU for purposes of the RA. *Soledad,* 304 F.3d at 503-04. Under the ADA, Plaintiff is required to demonstrate that discrimination against her due to her back condition was a "motivating factor" in her dismissal. *Maples v. Univ. of Tex. Med. Branch at Galveston,* 524 Fed. Appx. 93, 95 (5th Cir. 2013) (citing *Pinkerton v. Spellings,* 529 F.3d 513, 519 (5th Cir.2008)).

"Requiring high standards for future [veterinarians] is necessary for the proper treatment of patients." *Maples,* 901 F. Supp. 2d 874, 883-84 (S.D. Tex. 2012), aff'd 524 Fed. Appx. 93 (5th Cir. 2013). Here, the sole reason for Plaintiff's dismissal from the DVM program was her failure to meet the program's academic standards. **Ex. 1**; **Ex. 1K**. There

is no competent evidence to suggest that "the only cause" of Plaintiff's poor academic performance was discrimination against her due to her back condition. Plaintiff was dismissed pursuant to the Handbook's academic performance policy. **Ex. 1; Ex. 1E; Ex. 1K**. Two of the poor grades that contributed to Plaintiff's dismissal were earned during her first semester, when she had not requested accommodations for any condition. **Ex. 1**; **Ex. 1K**; **Ex 7**, D_002494-5; **Ex. 2**, p. 69-72; 75, 85. These grades necessarily cannot be attributed to discrimination due to a disability or a failure to accommodate a disability that Plaintiff had not requested accommodations for from Disability Services. During Plaintiff's second semester, when she asserted in a grade appeal that a delay in providing her accommodations contributed to a failing grade, TAMU permitted Plaintiff to remediate the portions of the class she failed to obtain a passing grade. **Ex. 1**; **Ex. 1A**; **Ex. 1C; Ex. 1D**. Plaintiff then received a D grade in a core clinical rotation due to poor knowledge base, but Plaintiff's grade appeal was granted due to an issue with the clinician's syllabus. **Ex. 1; Ex. 1G**. Plaintiff then failed general surgery. **Ex. 1; Ex 1J; Ex. 1K**. During the rotation, Plaintiff did not alert Disability Services or DVM administrators that her accommodations were not being met. **Ex. 1**; **Ex. 2**, p. 180, 183; **Ex. 4**, D_001502; **Ex. 6**, p. 22. Plaintiff never appealed that grade. **Ex. 1**; **Ex. 2**, p. 231. This process would have permitted TAMU to evaluate Plaintiff's contentions and those of the clinician regarding Plaintiff's performance—including if a failure to provide accommodations contributed to Plaintiff's poor performance. Under these facts, Plaintiff cannot demonstrate that a motivating factor, let alone the sole cause of her academic dismissal, was caused by disability discrimination.

## B. Plaintiff's Failing General Surgery Grade Had Nothing To Do With Her Disability.

In *Maples¸* the court dismissed the plaintiff's ADA and RA claims because there was no evidence in the record suggesting that the plaintiff's disabilities caused her to receive the failing grade that resulted in her dismissal. *Maples*, 524 Fed. Appx. at 95. The same is true here.

Plaintiff did not indicate the need for a cart for equipment prior to the general surgery rotation. **Exhibit 3**, REISS 00969; **Ex. 2**, pp. 173-74. Rather, the competent evidence shows that Plaintiff requested a cart directly from Dr. Richard's *during* a surgery that Dr. Richard's was required to supervise. **Ex. 4**; **Ex. 2**, p. 175-79, 183. By Plaintiff's own testimony, there were various technicians available that could have assisted Plaintiff with obtaining equipment, but Plaintiff did not ask any of the technicians for assistance. *Id*. Additionally, the following day Dr. Richards provided Plaintiff with mid-rotation feedback and asked how Plaintiff's accommodations were going. **Ex. 5**.  Plaintiff stated they were going well, her classmates were professional, and she understood the prior days surgery was a weird situation so she just "rolled with it." *Id.* Dr. Richards discussed putting equipment up high on IV poles for Plaintiff because the surgical suite was cramped. *Id.* Plaintiff did not indicate that this plan would be an issue or would fail to accommodate her disability. *Id.*; **Ex. 4**, D_001502-05.

Dr. Richards also stated that Plaintiff was approaching surgeries with too much confidence, and she needed to slow down and ask questions to confirm the next steps. **Ex. 5**. Dr. Richards subsequently provided Plaintiff with detailed, written feedback and steps

Plaintiff needed to take to demonstrate improvement. **Ex. 1H**, REISS 00439-40; **Ex. 2**, p. 183. Plaintiff did not show any improvement, and Dr. Richards met with Plaintiff in person to discuss her performance and that she was in danger of failing the course. **Ex. 1H**, REISS 00437; **Ex. 2**, p. 183, 199. At that point, Plaintiff further demonstrated her inability to admit mistakes or accept constructive criticism by disputing Dr. Richards' feedback (and still does today). **Ex. 1H**, REISS 00437-38; **Ex. 2**, pp. 185-90, 202-03. At no point did Plaintiff assert that her performance was being impacted by a lack of accommodations for her back, either to Dr. Richards or to Dr. Cornell when Plaintiff reached out to Dr. Cornell concerned about her grade on the rotation. **Ex. 1; Ex. 1H; Ex. 1I**.

Plaintiff's failing general surgery grade is substantiated with ample written evidence of Plaintiff's deficient knowledge base and performance on the rotation—inadequate performance that began with her first surgery, before she was ever responsible for anesthesia, when she made an incision on an animal in the wrong location. **Ex. 1H; Ex. 1J**. The clinician's well-documented concerns went to Plaintiff's medical knowledge, ability to evaluate patients under anesthesia by sight without heavy reliance on monitors (the very monitors Plaintiff now asserts were impacted by a lack of accommodations), and Plaintiff's subpar surgical skills—including that Plaintiff did not listen to instruction or admit errors, but instead represented that she was performing procedures in a way she had seen other clinicians perform even when Plaintiff's techniques, from a medical standpoint, could not be successful. **Ex. 1H; Ex. 1J**. Per the clinician, Plaintiff had not demonstrated an ability to take instruction, accept mistakes and learn from them, or ask questions when she did not know how to do something. **Ex. 1H**, REISS 00436-37. "I do not trust you as a veterinarian

at this point in time. I feel that if I pass you, I am passing the buck to the next clinician without fixing the problem." **Ex. 1H**, REISS 00437. Dr. Richard's felt "responsible for the health and well-being of the patients you will encounter in your career. Right now, I can't trust you." **Ex. 1H**, REISS 00437; **Ex. 4**. The competent record evidence establishes that Plaintiff's failing grade had nothing to do with Plaintiff's disability or disability discrimination.

This case is not about whether Dr. Richards—or TAMU—correctly assessed Plaintiff's academic performance, but rather, whether Dr. Richards and TAMU discriminated against Plaintiff based on her back condition.  While the RA and ADA prohibit discrimination, they do not "erect an impenetrable barrier around the disabled [plaintiff]." *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir.1995). The Court should defer to Dr. Richards' professional judgment that Plaintiff's performance on the general surgery rotation merited a failing grade. "Medical educators [] are entitled to a degree of discretion when determining their student's level of medical ability and knowledge—particularly when patient safety is at stake." *Baker v. Univ. of Texas Health Sci. Ctr. Houston*, No. H-08-1908, 2011 WL 1549263, at *3 (S.D. Tex. Apr. 21, 2011); See *Regents of Univ. of Mich.*, 474 U.S. at 225. Plaintiff seeks to curb that discretion in two ways: by asking this Court to question Dr. Richards' assessment of her capabilities and by asking this Court to require TAMU to permit Plaintiff to take her remaining Teaching Hospital clinical rotations at locations that Plaintiff selects where TAMU will have limited (if any) supervision and ability to measure Plaintiff's knowledge, skills, and performance against TAMU's rigorous DVM program standards. Even though Plaintiff was dismissed

form the program. TAMU was well within its authority to require Plaintiff to meet its demanding standards, as a DVM program responsible for producing top-notch veterinarians—a responsibility that Dr. Richards and TAMU takes seriously and did not believe Plaintiff had satisfied. **Ex. 1; Ex. 1H**. This court should not usurp TAMU's academic judgment, and should grant TAMU's motion for summary judgment.

## IV.   TAMU Is Entitled to Summary Judgment of Plaintiff's Compensatory Damages Claim.

A plaintiff can recover compensatory damages only if she proves the defendant committed a violation of the ADA or RA and that the discrimination was intentional." *Campbell* at 380 (citing *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). While the Fifth Circuit has not set forth the "precise contours" of the standard for showing intentionality, it requires 'something more than deliberate indifference.'" *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020) (quotation omitted). "**When the record is devoid of malice, ill-will, or efforts…to impede a disabled student's progress, summary judgment <u>must</u> be granted in favor of the university**." *Campbell*, 842 F.3d at 380 (internal quotation marks omitted) (emphasis added). "**In such a case, this court <u>must</u> defer to the university's academic decision not to alter its program**." *Id.* (citations omitted) (emphasis added).

The Court should afford deference to TAMU's decision regarding both Plaintiff's dismissal from the DVM program and its rejection of Plaintiff's preferred mental health condition accommodations as unreasonable.  Plaintiff cannot demonstrate that TAMU discriminated against her, much less did so intentionally by acting with deliberate

indifference. *See Campbell*, 842 F.3d at 380 (citing *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 859 (5th Cir. 1993)). TAMU's objections to Plaintiff's requested accommodations legitimately relate to the impact the request would have on the program and are not "academic decisions disguising truly discriminatory requirements." *Campbell*, 842 F.3d at 381-82 (citation omitted). TAMU proposed alternative accommodations to address Plaintiff's concerns of her accommodations being implemented by professors, her concerns with fellow classmates, and to help Plaintiff obtain local counseling and support. **Ex. 6,** pp. 40-41, 60; **Ex. 6A**, D_002569; **Ex. 6B**, D_002501-2. Since the record evidence demonstrates that TAMU was not deliberately indifferent to Plaintiff, TAMU is entitled to summary judgment on Plaintiff's claim for compensatory damages.

## V.    All Alleged Conduct Occurring Before January 21, 2019 is Time Barred.

Plaintiff's Amended Complaint asserts claims for failure to accommodate between March 2019 and August 2019, but contains a litany of allegations regarding events that are not actionable because they are barred by the statute of limitations. Texas's two-year personal injury statute of limitations applies to Ada and RA claims. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (ADA and the RA). Under federal law, such claims accrue when "the plaintiff knows or has reason to know of the injury that is the basis of [her] complaint." *Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987).[7] Any

---

[7] Plaintiff's Amended Complaint also does not set forth a cause of action for disability discrimination based on student-on student-harassment. The Fifth Circuit has never formally recognized such an ADA or Rehab Act claim, and its stringent requirements of deliberate indifference to severe, pervasive harassment based on disability that created an abusive educational environment. *Harrison v. Klein Indep. Sch. Dist.*, 856 Fed. Appx. 480, 487 n. 6 (5th Cir. 2021)

attempt by Plaintiff to rely upon discrete acts occurring more than two-years before she filed her lawsuit to support her ADA and RA claims should be rejected by the Court.

## CONCLUSION

If Plaintiff wishes to finish her degree in the Dallas area, she is free to do so by enrolling in a program in that area. But this Court should not second-guess TAMU's determination that essential requirements of TAMU's rigorous DVM program would be fundamentally altered by Plaintiff's preferred accommodation of completing universally required, core clinical courses as externships at off-site, unaccredited locations she personally selected. A request Plaintiff made after she was dismissed from the DVM program for failing to meet its academic standards. Texas A&M University and its President respectfully request that the Court grant summary judgment in their favor because Plaintiff's Rehabilitation Act and Americans with Disability Act claims do not raise a genuine dispute as to any material fact, and they are entitled to judgment as a matter of law. Defendants also request any further just and equitable relief to which they may be entitled.

Dated: November 4, 2022                    Respectfully submitted.

                                           KEN PAXTON
                                           Attorney General of Texas

                                           BRENT WEBSTER
                                           First Assistant Attorney General

---

("Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or [RA].").

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief - General Litigation Division

/s/ Allison M. Collins
**ALLISON M. COLLINS**
Texas Bar No. 24127467
SBN: 3736145
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512.475.4058 (direct)
512.320.0667 (facsimile)
allison.collins@oag.texas.gov

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with Plaintiff's counsel in good faith on November 4, 2022 by email regarding this *Defendants' Motion for Summary Judgment*.

/s/ Allison M. Collins
ALLISON M. COLLINS
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, a true and correct copy of the foregoing document was served on the following person via electronic mail:

Paul Robert Harris
Todd Slobin
Mark G. Lazarz
Shellist, Lazarz, Slobin, LLC
11 Greenway Plaza, Suite 1515
Houston, TX 77046
pharris@eeoc.net
mlazarz@eeoc.net
tslobin@eeoc.net

*Counsel for Plaintiff*

/s/ Allison M. Collins
ALLISON M. COLLINS
Assistant Attorney General