## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VALERIE REISS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:21-cv-00263 |
| | § | |
| TEXAS A&M UNIVERSITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Plaintiff Valerie Reiss ("Reiss") filed this lawsuit against Defendants, alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, for disability discrimination and failure to accommodate. Now before me is a Motion for Summary Judgment filed by Defendants Texas A&M University ("TAMU") and Mark Welsh III ("Welsh")[1] (collectively, "Defendants"). *See* Dkt. 44. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.

### BACKGROUND

#### A.   REISS'S HEALTH CONDITIONS

Doctors diagnosed Reiss with scoliosis when she was 19 years old. Scoliosis is a sideways curvature of the spine. Reiss describes her limitations due to scoliosis as follows:

> My medical letters have consistently listed my accommodations
> as no lifting, no bending, the use of equipment (standing desk, lumbar

---

[1] At the time that Reiss filed this lawsuit, she identified Dr. John L. Junkins ("Junkins"), the interim president of TAMU, as a defendant. On July 21, 2023, Welsh became the new interim president at TAMU. Pursuant to Federal Rule of Civil Procedure 25(d), Welsh has taken Dr. Junkins's position as a defendant in this litigation. *See* FED. R. CIV. P. 25(d); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Indeed, when officials sued in this [official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.").

support chair, carts, etc.) to assist with physical activities, and time for heat/cold therapy or stretching. My spinal/musculoskeletal condition makes bending forward or to the side at the waist, sitting for long periods, deadlifting items from/to the floor, and other motions painful. Repetitive motions of this manner can and have worsened this condition over the last few years.

Dkt. 51-2 at 8. Reiss alleges that she also suffers from severe situational depression and post-traumatic stress disorder.

**B.    REISS STARTS VETERINARY SCHOOL**

In the fall of 2015, Reiss enrolled in the Doctor of Veterinary Medicine ("DVM") program at TAMU with an expected graduation date of May 2019.

Reiss's first semester grades included an F and a D. This was obviously concerning. Per the student handbook, DVM students "who accumulate any combination of two (2) Ds and one (1) F, two (2) Fs, or three (3) Ds, will automatically be dismissed from the professional DVM program." Dkt. 45-1 at 160; *see also* Dkt. 44-1 at 31. The takeaway: Reiss did not have much runway. If Reiss received one more D or F during her remaining time in the DVM program, she would be dismissed for poor academic performance.

**C.    REISS'S FIRST REQUEST FOR ACCOMMODATIONS**

At the beginning of her second semester of veterinary school in January 2016, Reiss requested accommodations from TAMU's Department of Disability Services ("Disability Services"). Reiss claimed she needed accommodations to prevent pain and injuries caused by heavy lifting, sitting continuously, and bending to see test items. On January 28, 2016, Disability Services agreed to allow Reiss "[e]xtended time for tests," "flexibility with tardiness," and "limited physical activity." Dkt. 44-10 at 2. To receive these accommodations, Reiss needed to "[d]eliver accommodations letters to [her] course instructors and discuss testing and other academic accommodations." *Id.* Disability Services also instructed Reiss that if "the accommodations are not being met by the instructor, it is your responsibility to contact your Access Coordinator," Dr. Kristie Orr. *Id.*; *see also* Dkt. 44-6 at 15 ("The student has the responsibility to let us know that the professor

is not providing the accommodations, and then we can follow up."). Disability Services continued to provide Reiss the same accommodations each semester.

**D.    REISS STRUGGLES IN A GENERAL SURGERY ROTATION, ULTIMATELY CHECKING HERSELF INTO A HOSPITAL**

The only actionable events giving rise to this lawsuit occurred in the spring of 2019, during Reiss's last semester of veterinary school.[2] The fourth and final year of veterinary school consists of a series of two-week externships and clinical rotations led by TAMU faculty. In March 2019, Reiss took a small animal general surgery rotation with Dr. Amanda Richards ("Dr. Richards"). "Before the rotation began, Reiss emailed and spoke with Dr. Richards to inform her about the accommodations she would need," including a standing desk and a cart on which to put supplies so that she would not have to bend over repeatedly. Dkt. 51 at 7. Dr. Richards emailed Reiss back to let her know that the general surgery room did not have standing desks, but that Reiss could bring her own standing desk. Dr. Richards also wrote that "[a]s far as lifting and bending, we can definitely help you out in that regard." Dkt. 44-3 at 2. When the rotation began the week of March 4, 2019, there was no cart in the classroom for Reiss. Reiss raised this issue with Dr. Richards "several times at the beginning of the rotation," but Reiss did not contact Disability Services. Dkt. 44-2 at 26.

During a surgery on March 7, 2019, Reiss again asked Dr. Richards for a cart. According to Reiss, Dr. Richards—who supervised the surgery—"snapped" at Reiss and told her that "from now on, you need to put [the equipment] on the floor by yourself." *Id.* at 27. On March 8, 2019, Dr. Richards met with Reiss for a mid-rotation evaluation. Dr. Richards addressed the events of the previous day,

---

[2] "Texas's two-year personal-injury limitations period applies to" Title II of the ADA and [Rehabilitation Act] cases. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Given that Reiss filed this lawsuit on January 27, 2021, Defendants argue that the only actionable allegations in Reiss's Amended Complaint are those that occurred after January 27, 2019. *See* Dkt. 44 at 38. I agree. Accordingly, I will consider only those disability-discrimination and failure-to-accommodate allegations arising after January 27, 2019.

acknowledging that she had been "stressed out." Dkt. 44-5 at 7:13 (audio recording of meeting between Reiss and Dr. Richards). Reiss agreed that it was a "weird situation." *Id.* at 7:19. Dr. Richards asked Reiss how the accommodations were going, noting that she "wanted to make sure we are accommodating you well." *Id.* at 7:30–32. Reiss responded that the accommodations were "pretty good overall" and raised no specific concerns, beyond acknowledging that she needed to make sure that she raised the surgery table high enough so that her back did not hurt. *Id.* at 6:34–35.

Dr. Richards also discussed Reiss's performance during the mid-rotation evaluation. Dr. Richards told Reiss that she was doing "well," she "could tell that [Reiss] stud[ied]," and Reiss approached "everything with confidence—sometimes a little too much confidence." *Id.* at 3:42–50 Dr. Richards told Reiss to not rush through surgeries, to "keep up the good work, ask questions when you need to, if you're not sure about something, don't guess, just ask questions." *Id.* at 4:45–51.

On March 18, 2019 (the Monday night of the second and final week of the rotation), Dr. Richards emailed Reiss "to bring up a few points that we[re] a bit concerning" to her based on her observations in surgery that day. Dkt. 45-1 at 154. According to Dr. Richards, Reiss (1) miscommunicated with another student about which medications to prescribe, which was "not safe"; (2) asked questions about things that Reiss "should know by now"; (3) needed "to know how to evaluate the patient" by sight rather than "[s]imply looking at a monitor"; and (4) did not know how to troubleshoot her patient's hypotension "in an effective way." *Id.* at 155. Dr. Richards wrote that "[h]aving confidence is great, but being too confident when you are not proficient at a specific skill set is dangerous." *Id.* Lastly, Dr. Richards listed the areas in which Reiss needed to improve by the end of the rotation:

> 1. Do not assume - if you are unsure of something, ask before you do.
> 2. Communicate with your classmates more effectively - if you feel they are not communicating with you, let them know and do not just isolate yourself.
> 3. Know how to read your patient without relying on the monitor.
> 4. Take our instructions seriously. When we make corrections, it is because we are trying to help you learn. We are not trying to criticize or make you feel badly.
>
> I truly think you are a very bright student and I know how passionate you are about this profession. I want this email to come across as a colleague trying to help you succeed, not as an instructor trying to nit-pick. From the email you sent me before the rotation started, I know you have had issues in the past. I do not know specifics as I am still very new at TAMU, but I do know that your performance on this rotation needs to improve. Whatever I can do to help you learn, please let me know and I will do my best.

*Id.*

Reiss did not see Dr. Richards's email that night or the next day. Reiss says she first learned of the email on Wednesday, March 20, 2019, when Dr. Richards discussed her concerns with Reiss during an in-person meeting in the presence of a technician. During that meeting, Dr. Richards allegedly told Reiss that she "planned to fail [Reiss] from the course." Dkt. 44-2 at 40. Reiss emailed Dr. Richards back on Wednesday night, providing her interpretation of the evaluation and the points of concern that Dr. Richards raised. Reiss did not voice any concerns about accommodations.

Dr. Richards responded to Reiss on Thursday night, March 21, 2019, and copied other faculty on the email, including Dr. Karen Cornell ("Dr. Cornell"), an Associate Dean for the DVM program. Dr. Richards wrote that Reiss "seemed to be doing well on week 1 but [Reiss] only had a couple surgeries, with a couple mistakes. I did not realize that it was going to get worse over the course of the rotation." *Id.* at 151. Dr. Richards noted that Reiss was "impossible to teach" because she acted like she knew everything already. *Id.* Additionally, Dr. Richards said that Reiss's actions were "dangerous" because she invented ways to perform surgeries instead of asking questions and made-up excuses instead of admitting mistakes. *Id.* Dr. Richards ended the email by writing that she "d[id] not trust [Reiss] as a veterinarian at this point in time," that if she passed Reiss she was "passing the buck on to the next clinician without fixing the problem," and that she

would discuss Reiss's grade with Dr. Cornell and the other faculty members copied on the email. *Id.* at 152.

Reiss alleges that during this time period she experienced consistent panic attacks because of Dr. Richards's "unfair criticism," bullying from her classmates, and the lack of accommodations. Dkt. 51 at 8. On the last day of the general surgery rotation, Reiss missed class because she "checked herself into a hospital when she started having suicidal ideations." *Id.*

**E.    REISS IS DISMISSED FROM THE DVM PROGRAM AFTER FAILING THE GENERAL SURGERY ROTATION AND BEGINS A MEDICAL DEFERRAL**

Reiss received a failing grade in the small animal general surgery rotation. In a letter dated April 3, 2019, Dr. Cornell informed Reiss that she had been automatically dismissed from the DVM program, having failed the general surgery rotation and having previously received an F and a D during her first semester of veterinary school.[3] The dismissal letter sent to Reiss indicated in bold font what steps Reiss could take to appeal the grade or dismissal:

---

[3] TAMU dismissed Reiss from the DVM program twice previously because of her grades. In addition to the D and F Reiss received in the fall of 2015 (before she had requested accommodations), Reiss received a D in a gross anatomy course in the spring of 2016, resulting in her first automatic dismissal from the program. Reiss appealed her grade in gross anatomy, attributing the grade to TAMU's delay in providing a height-adjustable table and a chair with lumbar support. TAMU allowed Reiss to remediate gross anatomy and readmitted her to the DVM program after she earned a C in the course.

Reiss's second automatic dismissal occurred after she earned a D in a small animal internal medicine rotation. Reiss initiated informal and formal grade appeals, attributing the grade to a respiratory infection and other extenuating circumstances. Ultimately, TAMU readmitted Reiss to the program after a committee found that the rotation instructor "did not fully explain and define grading criteria" in the syllabus. Dkt. 45-1 at 200.

> Students who have been dismissed from the DVM program for academic reasons have the right to the following actions:
>
> - **Initiate a grade appeal process** for the grade of F earned in the Small Animal General Surgery rotation. Grounds for appeal as listed in the Professional Student Handbook are related to the establishment of proof that there was capricious or discriminatory academic evaluation. **If you wish to appeal this grade, you must notify me in writing within 10 business days after receipt of this email OR if you receive a medical deferral, 10 days after the completion of a medical deferral.** *This letter should state the type of appellate option you choose (formal or informal) and address how the grading was capricious or discriminatory,* as stated in the Professional Student Handbook, section 4.9.K-N. If the grade appeal is denied, you may choose to appeal for readmission as is outlined below.
>
> OR
>
> - You may choose not to appeal the grade but instead **appeal for readmission** into to the DVM program. **In order to appeal for readmission, you must notify me in writing within 10 business days after receipt of this email OR if you receive a medical deferral, 10 days after the completion of a medical deferral.** The request for readmission must include the criteria outlined in the Professional Student Handbook Section 7 under Readmission to the Professional Program.

Dkt. 45-1 at 160.

On April 9, 2019, almost one week after Reiss received notice of her dismissal for poor academic performance, she requested a medical deferral from the DVM program. TAMU allows medical deferrals for up to one year, and TAMU granted Reiss's medical deferral with an effective date of March 25, 2019. The letter to Reiss granting the deferral clearly states that Reiss could delay pursuing the appeal process until she returned from medical deferral:

> Additionally, because you have been dismissed from the professional curriculum based upon your accumulation of 2Fs and 1D in the DVM program, 10 days following your return from the medical deferral, you must notify the Professional Programs Office if you wish to appeal the failing grade you earned on Small Animal General Surgery - rotation 2018V-22 - or if you wish to appeal for readmission to the DVM program. Based on the current date of estimated return to clinical rotations of May 6, 2019, failure to notify Dr. Karen Cornell in the Professional Programs Office by May 16, 2019 at 5 pm of your intent to either file a grade appeal or appeal for readmission will result in the inability to proceed in clinical rotations or complete the DVM degree.

Dkt. 45-1 at 163.

**F.  DISABILITY SERVICES DENIES REISS'S SECOND ACCOMMODATION REQUEST, FINDING THE REQUEST UNREASONABLE**

Although Reiss was on medical deferral, she submitted an accommodation request form, asking to complete her remaining rotations at alternative locations in Dallas–Forth Worth. Per TAMU's curriculum, Reiss still needed to complete

Houston Society for the Prevention of Cruelty to Animals and small animal emergency rotations, in addition to the small animal general surgery rotation that Reiss failed. Two of the three rotations take place at TAMU, and all three are supervised by TAMU professors or clinicians. A committee responsible for reviewing accommodation requests informed Reiss on May 10, 2019, that it denied her request because her preferred accommodations were unreasonable. The committee proposed the following alternative accommodations:

1) Disability Services, a vet school representative, and clinical supervisors will meet with Reiss before each rotation to review the accommodations and discuss any concerns from Reiss or the supervisors about how to provide them.

2) Disability Services will meet with Reiss weekly to make sure that accommodations are being provided and discuss any concerns.

3) Disability Services will work with Student Counseling Services to determine if additional counseling sessions can be provided if Reiss seeks counseling on campus.

4) Disability Services will review new accommodation requests and then discuss with Reiss how they should be handled.

Reiss found these alternative accommodations unsatisfactory, stating that she "had already tried them all and we know how that ended up—with [me] in the hospital" and that none of the accommodations addressed how to prevent bullying. Dkt. 51 at 11–12.

In a subsequent phone conversation, Dr. Orr informed Reiss that she needed to discuss her discrimination concerns with TAMU's office for civil rights, who Reiss had already contacted about her bullying concerns. Reiss appealed the committee's decision, and on August 1, 2019, Dr. Orr told Reiss in an email that she decided to uphold the committee's denial of Reiss's accommodation request.

On August 8, 2019, Reiss emailed Dr. Eleanor Green ("Dr. Green"), a Dean at the College of Veterinary Medicine, indicating that she wished to return to active student status at TAMU. In response, Dr. Green reminded Reiss of the procedure for appealing her grade or dismissal, noting that the procedure is a "lock-step

process" and specifically advising Reiss that "we cannot change your student status until you move forward with the appeal process, which cannot happen until you indicate to Dr. Cornell that you are ready to return from the medical deferral." Dkt. 45-1 at 172.

Reiss acknowledges that she never appealed her failing grade or applied for readmission to the DVM program, and that her communication with Disability Services ceased in August 2019. *See* Dkt. 44-2 at 54–55.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020). It is not my role to weigh the evidence or evaluate its credibility, as those are fact questions for the jury to decide. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (holding that a district court makes an improper credibility determination when it weighs the evidence or chooses which testimony to credit and which to discard). That said, I am "not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated

assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Id.* (quotation omitted).

## DISCUSSION

### A.   SOVEREIGN IMMUNITY

Defendants first argue that the Eleventh Amendment bars Reiss's ADA claims against TAMU because the university is entitled to sovereign immunity as an arm of the state of Texas.[4] Although Reiss failed to respond to this argument, summary judgment "cannot be granted simply because there is no opposition." *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

In most circumstances, the assertion of Eleventh Amendment immunity challenges a court's subject matter jurisdiction and must be resolved before a district court may address the merits of the underlying claim. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285–86 (5th Cir. 1999). However, the Fifth Circuit has held that a district court "should first address whether the conduct challenged by the plaintiff violates Title II" of the ADA before "address[ing] whether Title II validly abrogates sovereign immunity." *Brockman v. Tex. Dep't of Crim. Just.,* No. 09-40940, 397 F. App'x 18, 23 (5th Cir. 2010). Proceeding in this manner will prevent a district court "from unnecessarily addressing the constitutional issue of whether the ADA may validly abrogate sovereign immunity." *Id.* "Should Plaintiff's Title II claim fail on the merits, the issue of the [defendant's] potential Eleventh Amendment immunity from this claim would become moot." *Gilmore v. Miss. Coast Coliseum Comm'n*, 1:12-cv-183, 2013 WL 1194706, at *6 (S.D. Miss. Mar. 22,

---

[4] As an aside, it is undisputed that Reiss's Rehabilitation Act claim is not barred by sovereign immunity. That is because "[a] state entity waives sovereign immunity under § 504 of the Rehabilitation Act by accepting federal financial assistance." *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020); *see also Eustice v. Tex. A&M Univ.*, No. 4:15-cv-03180, 2016 WL 8710444, at *9 (S.D. Tex. Sept. 30, 2016) ("[T]he state's receipt of federal funds is a knowing and voluntary waiver of its sovereign immunity as to claims arising under Section 504 of the [Rehabilitation Act]."). TAMU does not, however, waive immunity under the ADA simply because it is the recipient of federal financial assistance. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276 n.4 (5th Cir. 2005).

2013). For that reason, I will first analyze Reiss's claims on the merits and then, only if I find that summary judgment is not warranted on Reiss's claims, conduct a sovereign immunity analysis.

**B.     REISS'S DISCRIMINATION CLAIMS FAIL BECAUSE SHE CANNOT SHOW THAT HER DISABILITY WAS EITHER A MOTIVATING FACTOR OR THE SOLE REASON FOR HER DISMISSAL**

### 1.     Legal Standard

"The Rehabilitation Act and the ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies." *Maples v. Univ. of Tex. Med. Branch*, 901 F. Supp. 2d 874, 878 (S.D. Tex. 2012), *aff'd*, 524 F. App'x 93 (5th Cir. 2013). To establish a discrimination claim under either the Rehabilitation Act or the ADA "in the context of a student excluded from an educational program, a plaintiff must prove that: (1) she has a disability; (2) she is otherwise qualified to participate in the defendant's program; and (3) she was excluded from the program on the basis of her disability." *Id.* at 879 (cleaned up).

As then-District Judge Gregg Costa once noted:

> The only difference between the ADA and Rehabilitation Act in the application of these elements concerns the final requirement. Under section 504 of the Rehabilitation Act, '[n]o otherwise qualified individual with a disability . . . shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' 29 U.S.C. § 794(a) (emphasis added). The standard in Title II of the ADA more broadly prohibits exclusion 'by reason of [a] disability.' *Compare* 42 U.S.C. § 12132[,] *with* 29 U.S.C. § 794(a). Thus, while section 504 establishes a 'sole cause' test for causation, the ADA instead establishes a 'motivating factor' test.

*Id.* (quoting *Pinkerton v. Spellings*, 529 F.3d 513, 516–19 (5th Cir. 2008)).

### 2.     Analysis

Defendants argue that summary judgment is warranted on Reiss's discrimination claims under the Rehabilitation Act and ADA because Reiss

"cannot show that her disability was in any way related to her dismissal from TAMU (as required by the ADA), much less the 'sole reason' for her dismissal (as required by the [Rehabilitation Act])." Dkt. 44 at 32. Reiss fails to directly respond to this argument, let alone identify any evidence indicating that her disability was a motivating factor (or the sole reason) in TAMU's decision to dismiss her from the DVM program.[5] Upon my review, the summary judgment evidence conclusively establishes that TAMU dismissed Reiss from the DVM program because of her academic performance. Specifically, the summary judgment evidence shows that TAMU dismissed Reiss because she received an F in her small animal general surgery rotation, and her failing grade resulted from her deficient performance in class unrelated to her disability.

Critically, Reiss never argues that her disability motivated TAMU to dismiss her from the DVM program. Even if she had, the evidence indicates otherwise. For one, Reiss did not contact Disability Services or anyone in the administration about accommodations concerns during the spring of 2019. *See* Dkt. 44-2 at 25 (Reiss testifying that she "d[id]n't believe [she] talked about" the lack of a standing desk with Dr. Orr); *id.* at 31–32 (Reiss testifying that she "d[id]n't recall" contacting Dr. Orr about the lack of a cart); Dkt. 44-6 at 6 (Dr. Orr testifying that she did not think that Reiss contacted her about accommodations issues since the equine rotation in July 2018); Dkt. 45-1 at 157–58 (an email exchange between Reiss and Dr. Cornell, where Reiss did not address accommodations). Instead, all of the evidence documents Reiss's poor performance in the general surgery rotation with Dr. Richards. Tellingly, Dr. Richards communicated to Reiss multiple instances of

---

[5] It is not entirely clear whether Reiss intends to bring discrimination claims under the ADA and Rehabilitation Act. Her complaint includes headers alleging "DISCRIMINATION *AND* FAILURE TO ACCOMMODATE" causes of action under the ADA and Rehabilitation Act, yet the substance of the Amended Complaint focuses solely on her failure-to-accommodate claims. Dkt. 13 at 12–14 (emphasis added). In an abundance of caution and because Defendants address discrimination claims in their Motion for Summary Judgment, I will discuss the merits of Reiss's discrimination claims, whether she intended to bring them or not.

Reiss's concerning performance in the classroom and explained what Reiss needed to do to improve her performance in the rotation. Additionally, no evidence indicates that TAMU "strayed from [the program's] standard policies and procedures in evaluating" and ultimately dismissing Reiss from the DVM program. *Hebert v. Ascension Par. Sch. Bd.*, 396 F. Supp. 3d 686, 707 (M.D. La. 2019) (finding a genuine issue of material fact existed where "Plaintiff present[ed] evidence from which an inference could be drawn that Defendant either strayed from its standard policies and procedures when it came to evaluating Plaintiff, and/or Defendant failed to apply performance evaluations and standards equally to its teachers.").

Given that the summary judgment record does not evince a discriminatory motive on TAMU's part, I must "defer to [Dr. Richard]'s professional judgment that" Reiss's performance in the general surgery rotation merited a failing grade. *Maples*, 901 F. Supp. 2d at 883 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)). Accordingly, I find that Reiss's discrimination claims under the ADA and Rehabilitation Act fail because she does not show that her disability was a motivating factor (much less the sole factor) in her dismissal from the DVM program.

**C.    REISS CANNOT PROVE FAILURE TO ACCOMMODATE BECAUSE SHE IS NOT QUALIFIED AND SHE REQUESTED UNREASONABLE ACCOMMODATIONS**

### 1.    Legal Standard

To prevail on a failure-to-accommodate claim, a plaintiff must make three showings: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (quotations omitted). Relating to the third element, "[i]t is the plaintiff's burden to request reasonable accommodations." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

### 2.    Analysis

Defendants dispute only the first and third elements of a failure-to-accommodate claim. First, Defendants argue that Reiss "is not qualified because she does not satisfy the DVM program's essential academic performance requirements." Dkt. 44 at 23. Second, Defendants argue that Reiss requested unreasonable accommodations after her dismissal from the DVM program. *See id.* at 25. For the reasons explained below, I agree with Defendants. Therefore, summary judgment should be granted on Reiss's failure-to-accommodate claims.

### a.    *Reiss Is Not a Qualified Individual with a Disability*

A "qualified individual with a disability" under the ADA is an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The same is true under the Rehabilitation Act, which applies to "otherwise qualified individual[s]." 29 U.S.C. § 794(a); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.").

Defendants argue that Reiss is not qualified for the DVM program because Reiss "does not satisfy the DVM program's essential academic performance requirements" and "never appealed her failing grade [in the general surgery rotation] or appealed for readmission to the DVM program." Dkt. 44 at 23–24. As I established in the previous section, the evidence conclusively shows that Reiss failed the general surgery rotation as a result of her poor academic performance. In other words, Reiss failed to meet the DVM program's essential performance requirements. *See McGregor v. La. State Univ.*, 3 F.3d 850, 860 (law student who did not meet the school's minimum cumulative GPA requirements was not otherwise qualified to remain in the program). There were two routes Reiss could have taken to, once again, qualify for the DVM program: appeal her failing grade or apply for readmission. She took neither of these steps.

14

Reiss argues that "[i]t is disingenuous for [Defendants] to claim [Reiss] was somehow not qualified for the [DVM] program" where she "had already passed a national licensing exam and been offered several jobs." Dkt. 51 at 17. This argument misses the boat. The meaning of "qualified" under the ADA and Rehabilitation Act relates only to the program at issue; here, that is the DVM program, and Reiss's documented poor academic performance in the DVM program made her unqualified for the program.

Additionally, Reiss argues:

> [Defendants] claim[] Reiss had been dismissed from the program because she did not file a grade appeal or reapply for admission. But [they] told Reiss a different story when [they] told her that she could initiate her grade appeal or reapply for admission when she completed her medical deferral. And then, [Defendants] denied Reiss what she needed to return from that medical deferral, namely, allowing her to continue her remaining rotations away from campus.

*Id.* This argument goes nowhere. Defendants never claimed that Reiss was dismissed from the DVM program *because* she did not file a grade appeal or apply for readmission. She was automatically dismissed from the DVM program due to her poor grades. As Defendants point out, Reiss *remained* dismissed from the program because she did not file a grade appeal or apply for readmission. Even if Reiss's requested accommodations were reasonable—and, as discussed below, they were not—Reiss still would have had to first return to active student status by filing a grade appeal or applying for readmission to receive any accommodations.

Accordingly, Reiss is not a qualified individual within the meaning of the ADA or the Rehabilitation Act. Summary judgment on Reiss's failure-to-accommodate claims is warranted based solely on this finding. Still, I will proceed to analyze whether Reiss requested reasonable accommodations after she was dismissed from the DVM program.

### b.    *Reiss Requested Unreasonable Accommodations*

The ADA and Rehabilitation Act do "not mandate that an educational institution 'lower or [] effect substantial modifications of standards to

accommodate a handicapped person,' assuming such standards are reasonable." *McGregor*, 3 F.3d at 858 (quoting *Davis*, 442 U.S. at 423). A plaintiff is entitled to her requested accommodations "only if [s]he can demonstrate that the accommodations constitute reasonable deviations from the [program's] usual requirements" that do not sacrifice the integrity of the program. *Id*. at 858. A modification is unreasonable if it requires "a fundamental alteration in the nature of the program." *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 287 n.17 (1987) (cleaned up).

While on medical deferral, Reiss requested to complete her remaining clinical rotations at alternative locations led by non-TAMU professors and clinicians. Defendants argue that this accommodation—permitting a student to "complete core clinic rotations at personally selected, offsite locations or via externships"—would unreasonably alter the DVM program and "provide [Reiss] with preferential treatment." Dkt. 44 at 27.

But a larger problem exists. As Defendants point out, Reiss's requested accommodation necessarily entails readmitting her to a program from which she was dismissed for academic reasons that she did not appeal or address. In effect, "to provide [Reiss's] requested accommodation, [Defendants] would be required to ignore, override, or reverse [her] previous dismissal for unsatisfactory academic performance." *Profita v. Regents of the Univ. of Colo.*, 709 F. App'x 917, 920 (10th Cir. 2017). This accommodation is unreasonable under the ADA and Rehabilitation Act. As established above, Reiss was not dismissed from the DVM program by reason of her disability. "The disability statutes do not require that a disabled person properly terminated from a job or program be given a greater opportunity for reinstatement than that given to a terminated person who is not disabled." *Id*. at 924. To be readmitted to the DVM program, TAMU policy required Reiss to appeal her grade in the general surgery rotation or apply for readmission within 10 days after the completion of her medical deferral, which expired on March 25, 2020. *See* Dkt. 45-1 at 160, 163. She did not do so. This policy

applies to all students in the DVM program at TAMU; Reiss was not treated differently. In sum, to readmit Reiss to the DVM program without requiring her to first appeal her grade or appeal for readmission would amount to a "second chance," which "is not an accommodation as contemplated by the ADA." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 319 n.14 (5th Cir. 1997); *see also Maples*, 901 F. Supp. 2d at 882–83. Accordingly, the accommodations that Reiss requested while on medical deferral were unreasonable.

* * *

Given my findings that Reiss is not a qualified individual under the ADA or Rehabilitation Act and that Reiss requested unreasonable accommodations, Reiss's failure-to-accommodate claims fail. Summary judgment should be granted on these claims.

## CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment (Dkt. 44) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 9th day of August 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE